**Edward SENU–OKE,
Plaintiff/Respondent,**

v.

**MODERN MOVING SYSTEMS, INC.,
et al., Defendants/Appellants.**

No. 72892.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 11, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 30, 1998.

Application for Transfer Denied
Nov. 24, 1998.

Michael A. Gross, Cynthia A. Sciuto, Law Office of Michael A. Gross, St. Louis, for Defendants/Appellants.

James M. Martin, Martin & Malec, St. Louis, for Plaintiff/Respondent.

SIMON, Judge.

Modern Moving Systems, Inc. (Modern Moving), Vittco, Inc. (Vittco) and Russell Vitt (Vitt), defendants, appeal from judgments on jury verdicts awarding Edward Senu–Oke, plaintiff, compensatory damages in the amount of $150,000.00 for breach of contract and $150,000.00 for conversion, plus $43,-775.00 for punitive damages for a total award of $343,775.00.

On appeal, defendants contend that the trial court erred in: (1) submitting verdict directing instructions to the jury which assumed the disputed issue of whether Vitt acted in an individual capacity because the instructions removed the issue from the jury's determination and permitted the jury to impose liability without any preliminary finding that Vitt acted individually; (2) submitting the same damage instruction following the verdict directors on each claim because the instructions enabled the jury to return verdicts for redundant damages, and the trial court plainly erred in entering judgments on verdicts awarding redundant damages; (3) permitting plaintiff's counsel to testify regarding an "informal agreement," which formed the basis of plaintiff's punitive damages claim; (4) denying defendants' motion for directed verdict on the issue of punitive damages at the close of plaintiff's case and at the close of all the evidence because plaintiff did not submit clear and convincing evidence that defendants entered into an agreement not to sell plaintiff's property, or that defendants acted with an evil motive or reckless indifference to plaintiff's rights in selling property; (5) denying defendants' motion for remittitur because the evidence was insufficient to support the jury's verdict, in that plaintiff testified that his actual damages were $150,000.00 and the verdict awarded damages in excess of twice that amount; and (6) denying defendants' motion for a directed verdict on the issue of Vitt's personal liability at the close of plaintiff's case and at the close of all of the evidence because the evidence, viewed in the light most favorable to the verdict, did not establish that Vitt knowingly engaged in wrongful conduct. Judgment affirmed in part, reversed and remanded in part, and reversed in part.

The evidence viewed in the light most favorable to the verdict reveals that plaintiff contacted Modern Moving in the fall of 1992 to book the transfer of his family's household goods and personal belongings from Torrington, Wyoming to Hustisford, Wisconsin. Plaintiff testified that he spoke with Brenda Bucceri, the general manager of Modern Moving. During the conversation, plaintiff told Bucceri how many rooms of furniture were to be moved and described the contents of his home including two cars, a Mercedes-Benz and an Audi. Bucceri told plaintiff that, based on his description, the move would cost $2,400.00.

The job was booked and arrangements were made for Modern Moving to pick up plaintiff's goods between October 6, 1992 and October 10, 1992, with an agreed delivery date between October 10, 1992 and October 11, 1992. Bucceri informed plaintiff that the movers would arrive on October 7, 1992. Subsequently, Modern Moving sent plaintiff a Bill of Lading for $2,400.00 plus $600.00 packing cost, if needed. The Bill of Lading reflected a non-binding estimate for the move and because plaintiff packaged his property himself, the $600.00 packing charge was unnecessary. Plaintiff instructed his wife, Helen, to obtain a cashier's check for $2,500.00, so that the movers could be paid an additional $100.00 when they arrived. Plaintiff's wife and family drove to Wisconsin ahead of him.

On October 8, 1992, plaintiff called Modern Moving and spoke to Bucceri. The movers had not shown up yet and plaintiff stated he would have to leave Wyoming for Joliet, Illinois, where he had a new teaching job. He left Wyoming for Joliet on the afternoon of October 9, 1992. When plaintiff arrived in Joliet on October 10, he called Modern Moving, spoke with Bucceri and was informed that the movers were in Torrington. Plaintiff inquired about the move and was informed that the cost was still $2,400.00.

Plaintiff's next conversation with Modern Moving occurred Saturday, October 12, 1992, when he learned that his goods had not arrived in Hustisford, Wisconsin. Plaintiff had driven from Joliet to Hustisford on October 12 and was in Hustisford when he telephoned Modern Moving. Bucceri answered the phone and transferred the call to Russell Vitt, president of Modern Moving. Vitt told plaintiff that Bucceri misquoted the price and that the move would cost $3,600.00 plus $400.00 for the second car. Vitt explained that the second car would not fit on the same truck as the rest of plaintiff's goods and had to be placed on another trailer. Plaintiff agreed to pay the $4,000.00 and asked when the shipment would be delivered. He was

told that it would arrive in Hustisford on October 14, 1992.

On October 13, plaintiff returned to Joliet from Hustisford to teach classes the next morning. On October 14 at 10:22 p.m., plaintiff spoke to Vitt from his apartment in Joliet. Vitt told plaintiff that he had the goods "loaded up" and plaintiff arranged to meet the movers in Wisconsin on October 15. Plaintiff drove from Joliet back to Hustisford to wait for the movers. At some point on either October 14 or 15, he received a verbal request for $3,600.00 from either Vitt or another representative of Modern Moving. Plaintiff agreed to pay the price because he had $10,000.00 in cash at his home in Hustisford.

On the evening of October 15, plaintiff received a telephone call from Vitt at his home in Hustisford. Plaintiff told Vitt how to get to Hustisford. He waited all night for the movers to show up, but they never did. Plaintiff left Hustisford for Joliet early in the morning of October 16 to fulfill his teaching responsibilities. He did not hear from Vitt or Modern Moving until he received a letter, dated October 19, 1992, advising him that the bill, including storage, was $7,200.00. After receiving the letter, plaintiff contacted Vitt and told him that "money was no problem" and he would pay him the $7,200.00, if his goods were delivered. Vitt refused to deliver unless plaintiff first mailed a cashier's check for $7,200.00. Eventually, Vitt authorized the sale of plaintiff's goods. Modern Moving sold the majority of plaintiff's goods at auction and those goods not sold were destroyed in a fire at the warehouse where they were being stored.

On January 29, 1993, plaintiff filed a three count petition against Modern Moving in the Circuit Court of the City of St. Louis. Count I was for breach of contract, Count II for specific performance, and Count III for replevin. Plaintiff alleged that he "was the owner and possessor of all property" in a list of goods attached to his petition, and set a value of those goods at $50,000.00. Modern Moving received a notice in January 1993 demanding return of the goods.

Defendants filed an answer and counterclaim on March 11, 1993. The answer as-

serted that plaintiff was estopped from suing by his wrongful refusal to accept delivery of his goods and that Modern Moving had retained his goods pursuant to a valid lien established through Section 400.7–307 RSMo 1994 (all further references shall be to RSMo 1994, unless otherwise indicated). Defendants' counterclaim was for breach of contract or recovery in quantum meruit.

In October 1994, Vitt asked Bucceri to call Michael McKittrick, attorney for Modern Moving, and ask if the goods had to be stored indefinitely or whether they could be sold. McKittrick was not defendants' trial attorney. McKittrick advised that there was a storage lien statute that had to be complied with. McKittrick knew that a possessory claim for the goods existed because of the pending lawsuit. He testified that he could recall having discussed only the storage lien statute with his client in response to Bucceri's inquiry. McKittrick did not recall discussing the replevin statute.

During cross examination by James Martin, plaintiff's trial attorney, McKittrick was asked whether Scott Smith, a member of McKittrick's law firm during 1993, had attended the "informal meeting with [Mr. Martin] and Judge Jimmie Edwards." McKittrick did not know; he could "not [deny] it happened and [did] not [state] it did happen." Martin was then allowed to testify to rebut McKittrick's testimony. Defendants objected on the basis that Martin "could not testify in a case in which he is counsel for the plaintiff." Defendants' objection was overruled and Martin testified that an individual, whom he could not identify with certainty but believed was Scott Smith, "appeared with [Mr. Martin] in Judge Jimmie Edwards' court." Martin stated that they "informally worked out an agreement in Judge Edwards' chambers. The understanding [he] had with the gentleman from McKittrick's office was that the goods would [not] be sold during the processing of the lawsuit."

According to Martin, shortly after the meeting he took a check in the amount of Two Thousand Six Hundred and Forty Dollars and paid it into the registry of the court, but the record does not indicate why this

check was paid. Martin testified that the "next thing [he] heard about the property was just after the property was being sold sometime in the Fall of 1994."

On September 26, 1994, Modern Moving sent a notice addressed to "John Malec attorney for Edward Senu/Oke, of Martin and Malec, 1007 Olive Street, St. Louis, Missouri." Plaintiff's attorney of record at the time was actually James Martin of Martin and Malec. The notice stated that plaintiff's goods would be sold at public auction at Modern Moving's business location on October 22, 1994. Malec brought the notice to Martin's attention at or about the time of the sale. However, Martin "shrugged it off" because he believed there was an agreement not to sell plaintiff's property. At the time the sale was held, plaintiff's bill, including storage charges for two years, had accumulated to $14,243.27.

The record indicates that sometime during 1995, Modern Moving was administratively dissolved and on or about February 14, 1995, plaintiff filed his first amended petition against Modern Moving. He added two counts to the petition: Count IV for conversion and wrongful sale of goods; and Count V for punitive damages. Plaintiff again attached a list of goods and set a value of those goods at $50,000.00. In his claim for punitive damages, plaintiff alleged that the "sale proceeded during the pendency of this litigation and following promise not to sell property during the pendency of the lawsuit." He sought punitive damages in the amount of $25,000.00.

On January 12, 1996 plaintiff filed his second amended petition adding defendants Vittco, a Missouri corporation in good standing, doing business in the state of Missouri, and Vitt, president of both Modern Moving and Vittco and their sole shareholder. Plaintiff also alleged that he had expended $15,000.00 for substitute goods. In his second amended petition, plaintiff did not allege a value for his lost goods, but sought compensatory or actual damages "in excess of $25,000.00." He again sought punitive damages in the amount of $25,000.00.

Trial began on April 24, 1997. Plaintiff testified that, in addition to household goods and appliances, his family lost most of their personal possessions, including photographs, African art objects that had been in his family for generations, native African dress, a stereo system that he built himself, an extensive collection of audio tapes, a collection of about three hundred boxing tapes, textbooks, and research material that his wife had compiled in pursuit of an advanced degree. He testified that the value of all of his goods ranged between $128,000.00 and $138,000.00. Plaintiff asked the jury to award him actual damages in the amount of $150,000.00 and punitive damages in the amount of $100,000.00. At the close of plaintiff's case, defendants made an oral motion for a directed verdict on all counts, which was denied. The parties then stipulated that the goods not sold at auction were destroyed in a fire at the auction barn, except for plaintiff's piano and two automobiles. As a result, plaintiff dismissed his claim for specific performance. The case was submitted to the jury with separate instructions given for each remaining count. Defendants did not object to the jury instructions prior to submission to the jury.

The jury was instructed in three separate instructions to award damages as follows::

> If you find in favor of plaintiff, then you must award plaintiff such sum as you may find from the evidence to be the difference between the fair market value consisting of his household goods, furnishings and automobiles as identified in plaintiff's testimony, before it was damaged and its fair market value after it was damaged, plus such sum as you may find from the evidence will fairly and justly compensate plaintiff for the loss of use thereof during the time reasonably necessary for the property to be repaired or replaced.

The jury returned verdicts in favor of plaintiff and against Modern Moving, Vittco, and Vitt in the amount of $150,000.00 for the breach of contract claim; on the replevin claim for $150,000.00; and on the conversion claim for $150,000.00, plus $43,775.00 in punitive damages. On each verdict, the trial court entered judgment against Modern Moving, Vittco and Vitt.

Defendants filed motions for a new trial, judgment notwithstanding the verdict (JNOV), and remittitur. Defendants argued, inter alia, in the motion for new trial that plaintiff presented no evidence that Vitt acted in an individual capacity. In their motion for remittitur, defendants argued that "plaintiff's evidence was that the value of his goods retained by defendants was no more than $150,000.00" and that "the jury mistakenly awarded plaintiff actual damages of $150,000.00 for each separate count."

Defendants' motions were heard on June 13, 1997 along with an oral motion to elect remedies. The trial court entered the following order:

> The court hereby denies defendants' "Motion for New Trial" and "Motion for Judgment Notwithstanding the Verdict" but hereby grants paragraph 20 of the "Motion for New Trial" and pursuant to the oral "Motion to Elect Post–Trial" [remedies], and enters an order amending the judgment finding that the verdict in Count B, replevin, should be set aside, as the remedy is not available for replevin and the damages for "breach of contract" or "replevin" are essentially alternative recoveries and therefore duplicative. The verdict for $150,000.00 in Count B for replevin is set aside. Defendants' "Motion for Remittitur" is denied and the "Motion for Judgment Notwithstanding the Verdict" is denied in all other respects. Plaintiff offers to accept verdict in Count C for $193,775.00 in response to "Motion for Remittitur," but defendants decline to tender payment.

■ In their first point on appeal, defendants contend that the trial court erred by submitting verdict directing instructions to the jury which assumed as true the disputed issue of whether defendant Vitt acted in an individual capacity, because the instructions removed the issue from the jury's determination and permitted the jury to impose liability without any preliminary finding that defendant Vitt acted individually.

■ The threshold question is whether defendants preserved this point for our review. Defendants acknowledge that they did not specifically object to the verdict directing instructions at trial, or in their motion for new trial. Where a party has failed to preserve the giving or denying of the instruction, appellate review is limited to determining whether the giving or denying of the instruction constituted "plain error" under Rule 84.13. *King v. Unidynamics Corp.*, 943 S.W.2d 262, 266 (Mo.App.1997). Rarely applied, the plain error rule is reserved for situations, not raised on appeal or properly preserved, when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom. *Id.*

■ Plain error is not a doctrine available to revive issues abandoned by selection of trial strategy or oversight. *Id.* Here, the record indicates that defendants did not object to the verdict directing instructions when given the opportunity to do so in the instruction conference. Further, defendants failed to object to the instructions in their motion for new trial. By failing to comply with Rule 70.03, plaintiffs failed to preserve the giving of this instructions as error for review and we find no manifest injustice or miscarriage of injustice. Defendants' point is denied.

■ In their fourth point, defendants contend that the trial court erred by denying defendants' motions for directed verdict on the issue of punitive damages at the close of plaintiff's case and at the close of all the evidence, because plaintiff did not submit clear and convincing evidence that defendants entered into an agreement not to sell plaintiff's property, or that defendants acted with an evil motive or reckless indifference to plaintiff's rights in selling property. In their sixth point, defendants contend that the court erred in denying defendants' motion for a directed verdict on the issue of Vitt's personal liability at the close of plaintiff's case and at the close of all of the evidence because the evidence, viewed in the light most favorable to the verdict, did not establish that Vitt knowingly engaged in wrongful conduct. We address these points concurrently because defects in jury instructions are irrelevant if plaintiffs have not made a submissible case.

Defendants moved for a directed verdict at the close of plaintiff's evidence. The trial

court denied the motion. Defendants then presented evidence. By doing so, defendants waived any error in the denial of the motion. *Polovich v. Sayers*, 412 S.W.2d 436, 438[2] (Mo.1967); *Holland v. American Republic Ins. Co.*, 779 S.W.2d 775, 776[1] (Mo.App. 1989).

█ The trial court minutes indicate that a written motion for a directed verdict was filed by Modern Moving only and denied on April 24, 1997 at the close of defendants' case. However, that motion is not part of the record. It is the defendants' duty to provide this court with the record on appeal containing all of the record, proceedings and evidence necessary to the determination of all questions presented. Rule 81.12. Therefore, we do not review the motion. Further, the record reveals that defendants failed to make an oral motion for a directed verdict at the close of all the evidence. Therefore, this issue has not been preserved for our review. *Ball v. American Greetings Corp.*, 752 S.W.2d 814, 819[2] (Mo.App.1988). Points denied.

█ In their second point, defendants contend that the trial court erred in submitting the same damage instruction as to the verdict directors on each claim because the instructions enabled the jury to return verdicts for redundant damages, and the trial court plainly erred in entering judgment on verdicts awarding redundant damages. Because defendants did not object to the damage instructions prior to submission to the jury, this point was not properly preserved for our review. *French v. Missouri Highway and Transp. Com'n,* 908 S.W.2d 146, 150 (Mo. App.1995). However, because the damage instructions allowed the jury to return duplicative damage awards against defendants, and because the trial court entered judgments on the verdicts against defendants, we will review this point for plain error pursuant to Rule 84.13.

█ Plaintiff was entitled to be made whole by one compensatory damage award, but not to the windfall of double recovery. Thus, instructions that allow a jury to award damages that overlap or duplicate are error. *Clayton Brokerage Co. of St. Louis, Inc. v.*

*Pilla,* 632 S.W.2d 300, 306 (Mo.App.1982). It was error for the trial court to enable the jury to return verdicts for redundant damages. It was plain error for the court then to receive the verdicts and enter judgments thereon. *Kincaid Enterprises, Inc. v. Porter,* 812 S.W.2d 892, 901 (Mo.App.1991).

Here, plaintiff submitted three theories of recovery to the jury, while proving only $150,000.00 as his damages. Thus, the injury for the breach of contract, replevin and conversion claims were the same. Pursuant to the verdict directing instructions for each theory of recovery and the respective damage instructions, the jury returned the same compensatory or actual damages for each theory and the court entered judgments against defendants Modern Moving, Vittco, and Vitt. Thus, plaintiff was awarded damages in excess of his claim.

After hearing defendants' motions for new trial, JNOV and remittitur, the trial court set aside the judgment for replevin but denied the motions for new trial, remittitur and JNOV in all other respects. Thus, the judgments for $150,000.00 for breach of contract and $150,000.00 for conversion plus $43,-775.00 for punitive damages remained. While plaintiff's submission for conversion is not inconsistent with his submission for breach of contract, he may not recover damages in excess of his actual injury. *Pilla,* 632 S.W.2d at 306. Therefore, the trial court's error in entering the two judgments constitutes manifest injustice.

We have found no merit in defendants' point related to the conversion claim and affirm that portion of the judgment. Regardless of whether plaintiff was entitled to recover against defendants under the breach of contract claim, he was only entitled to only one recovery. *Pilla,* 632 S.W.2d at 306.

█ In their third point, defendants contend that the trial court erred in permitting plaintiff's counsel to testify at trial regarding an "informal agreement" which allegedly formed the basis of plaintiff's punitive damages claim. Prior to trial on April 21, 1997, defendants filed a written "Motion to Disqualify Plaintiff's Attorney" because plaintiff's attorney testified in a deposition given

on July 24, 1996. At trial, defendants objected to plaintiff's counsel testifying on the basis that an attorney can not act as a witness in a case in which he is the trial attorney. Defendants renewed the objections in their Motion for New Trial. Therefore, the point is preserved for review.

The attorney disciplinary rule governing attorney as witness generally prohibits an attorney from simultaneously serving as advocate and witness at trial. *State v. Mason*, 862 S.W.2d 519, 521 (Mo.App.1993). Rule 4–3.7 of the Rules of Professional Conduct provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

The comments to Rule 4–3.7 of the Rules of Professional Conduct state that, "combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client." It further states that, "the opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation." Comment to Rule 4–3.7.

In *State Farm Mutual Insurance Co. v. DeCaigney*, 927 S.W.2d 907, 912 (Mo.App. 1996), plaintiff was denied his request that his attorney be allowed to testify to hearsay statement to attorney because the request was contrary to the rule of professional conduct prohibiting an attorney from acting as an advocate at trial in which he is likely to be a necessary witness, and because attorney had already taken an active part in the trial and would be in a position of vouching for his own credibility to the jury if allowed to testify.

In the instant case, plaintiff's trial attorney was allowed to testify regarding an informal agreement made in Judge Edwards' chambers, which was allegedly made with Scott Smith, an attorney for defendants. Plaintiff's attorney testified that Smith agreed that plaintiff's property would not be sold by defendants during the pendency of the lawsuit. During cross-examination, plaintiff's attorney testified that "we have got the [punitive damage] claim because they sold it, for violating the hand-shake agreement and for violating the lawsuit." His testimony arguably formed the basis of the punitive damages claim and was, therefore, related to a material and contested issue. More importantly, it was foreseeable that he would be a necessary witness for the punitive damages claim because he testified in a deposition taken nine months prior to trial. Further, his testimony was not related to the nature or value of legal services rendered, and he did not prove that his failure to testify would work substantial hardship on his client. Because he had already taken an active part in the trial and his testimony did not fall under one of the exceptions to Rule 4–3.7, the trial court abused its discretion in permitting him to testify. Defendant's third point is meritorious. Therefore, the punitive damages judgment on the conversion claim must be reversed and remanded.

In their fifth point defendants contend that the trial court erred in denying defendants' motion for remittitur because the evidence was insufficient to support the jury's verdict in that plaintiff testified that his actual damages were $150,000.00 and the verdict awarded damages in excess of twice that amount. Due to the disposition of defendants' points, it is not necessary to address the issue of remittitur.

Therefore, the compensatory damage judgment for conversion is affirmed and the punitive damage portion of the judgment is reversed and remanded. Further, the judgment for breach of contract is reversed.

JUDGMENT AFFIRMED IN PART, REVERSED AND REMANDED IN PART, AND REVERSED IN PART.

ROBERT G. DOWD, Jr., P.J., and HOFF, J., concur.