Marianne PASALICH, Respondent,

v.

Eric SWANSON, M.D., Appellant.

No. WD 60304.

Missouri Court of Appeals,
Western District.

Oct. 22, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 26, 2002.

Scott K. Logan, Prairie Village, KS, for appellant.

William L. Carr, Kansas City, MO, for respondent.

Before BRECKENRIDGE, P.J., LOWENSTEIN and SMART, JJ.

PATRICIA BRECKENRIDGE, Judge.

Eric Swanson, M.D., appeals the trial court's order granting a new trial to Marianne Pasalich on her medical malpractice claim against him. First, Dr. Swanson claims that the trial court's order granting a new trial should be presumed erroneous because the trial court failed to issue a written order setting forth the basis for its ruling. Second, Dr. Swanson claims that the trial court erred in granting a new trial on the basis of his failure to supplement his deposition testimony because Ms. Pasalich failed to make a timely and proper objection and failed to demonstrate unfair surprise or prejudice. Finally, Dr. Swanson claims that the trial court erred in granting a new trial on the basis of the court's failure to give the "hammer instruction" in writing. This court finds that the trial court's reasons for granting the new trial motion clearly appeared from the court's oral statements in the record, so the presumption that the motion was erroneously granted was rebutted. Further, this court finds that the trial court did not abuse its discretion in granting a new trial on the basis of Dr. Swanson's failure to supplement his deposition testimony to advise Ms. Pasalich of a change in his opinion as to what caused her injury. Therefore, the trial court's order granting Ms. Pasalich a new trial is affirmed.

## Factual and Procedural Background

On September 6, 1995, Dr. Swanson, a cosmetic surgeon, performed several procedures on Ms. Pasalich, including an abdominoplasty, which is commonly known as a "tummy tuck"; liposuction of the abdomen, flanks, thighs, buttocks, and hips; and removal of a mole on her upper lip. These procedures were performed on an outpatient basis in a surgical suite in Dr. Swanson's office. During the surgery, Ms. Pasalich was given fluids to assist with the liposuction procedure and to maintain her fluid levels. After Ms. Pasalich was transferred to the recovery room, Dr. Swanson ordered that she be given more fluids because he believed Ms. Pasalich's difficulty in waking up from the anesthesia, her elevated heart rate, and her low blood pressure were caused by a potential fluid insufficiency. When Ms. Pasalich's condition did not improve after the administration of more fluids, Dr. Swanson ordered that she be transferred by ambulance to Shawnee Mission Medical Center.

At Shawnee Mission Medical Center, Dr. Robert Prosser diagnosed Ms. Pasalich with pulmonary edema due to fluid overload in her lungs. At that time, Dr. Swanson agreed with Dr. Prosser's diagnosis and indicated in progress notes he pre-

pared that Ms. Pasalich had suffered pulmonary edema due to fluid overload. Ms. Pasalich spent several days in the hospital.

After she was discharged from the hospital, Ms. Pasalich had follow-up visits with Dr. Swanson. At the end of October 1995, Dr. Swanson performed touch-up work on Ms. Pasalich to cut out an infection that had developed on her abdominoplasty incision, and to finish the liposuction procedure on one of her legs. Ms. Pasalich had more follow-up visits with Dr. Swanson until her last appointment on March 29, 1996.

In September 1997, Ms. Pasalich filed a petition against Dr. Swanson alleging medical malpractice. At trial, Ms. Pasalich presented three theories of negligence to the jury. First, she asserted Dr. Swanson was negligent for failing to inform her of the foreseeable risks associated with the procedures. Second, she asserted Dr. Swanson was negligent for performing an excessive amount of surgery on September 6, 1995. Third, she asserted Dr. Swanson was negligent in the way that he administered fluids to her. The jury returned a verdict for Dr. Swanson. Ms. Pasalich then filed a motion for new trial asserting several claims of error. After a hearing, the court granted the motion. Dr. Swanson filed this appeal.

## Oral Statements Specifying Reasons for New Trial were Sufficient

■ In his first point, Dr. Swanson claims that the trial court erred in granting a new trial because it failed to issue a written order setting forth its reasons for granting the new trial. At the close of the hearing on Ms. Pasalich's new trial motion, the trial court stated that it was granting the motion on two bases. First, the court stated it was ordering a new trial because Dr. Swanson "substantially and completely changed his opinion as to what caused the damage to [Ms. Pasalich] and appeared to have done it in the course of trial." Second, the court stated that it was granting a new trial because the court gave the "hammer instruction" to the jury orally and did not submit it in writing. After explaining these reasons and the prejudice the court believed Ms. Pasalich suffered as a result, the court ended the hearing on the new trial motion by stating, "That's going to be the order and ruling of the Court." The court then made a docket-entry order granting a new trial. In the docket entry, the trial court did not state any grounds for its new trial order, but stated, "Court makes record on issues."

Rule 78.03 provides that "[e]very order allowing a new trial shall specify of record the ground or grounds on which said new trial is granted." When the trial court does not comply with Rule 78.03's requirement to specify grounds for granting the new trial, Rule 84.05(c) applies. Rule 84.05(c) states:

When a trial court grants a new trial without specifying of record the ground or grounds on which the new trial is granted, the presumption shall be that the trial court erroneously granted the motion for new trial and the burden of supporting such action is placed on the respondent.

Dr. Swanson argues that the trial court's oral recitation of its bases for granting a new trial was not sufficient to satisfy Rule 78.03 and, therefore, pursuant to Rule 84.05(c), this court should presume that the trial court erroneously granted Ms. Pasalich's new trial motion.

This court has addressed whether we must presume that a trial court's grant of a new trial was erroneous where the trial court stated the grounds orally rather than in writing. Like the trial court in this case, the trial court in *Hightower v. Hightower*, 590 S.W.2d 99, 100 (Mo.App.1979),

stated its reasons for granting a new trial at the close of the hearing on the motion for new trial. When the trial court later entered a formal written order sustaining the new trial motion, however, the court did not state any grounds in the order. *Id.* at 101.

On appeal, this court held that, although the trial court's written order sustaining the motion for new trial did not set forth any grounds, Rule 84.05(c)'s[1] presumption that the new trial was erroneously granted was effectively rebutted because the grounds upon which the new trial motion was granted clearly appeared from the record. *Id.* at 103. This court recognized that while the trial court's oral statements could not be used to impeach the written order, the court's oral statements at the hearing on the motion could be considered to explain or support the order. *Id.* at 104. This court noted that the purpose of Rule 78.03 "is clearly to define and limit the issues cognizable on appeal, at least initially, and thus conserve judicial and legal time and promote clarity and establish reasonable limits to the scope of judicial decisions by confining the appeal to specific issues." *Id.* at 103. In light of the circumstances, this court found that the trial court's "technical and harmless failure to comply with Rule 78.03" did not constitute reversible error. *Id.* at 104–05.

Twenty-five years before *Hightower*, the Supreme Court held in *Hammond v. Crown Coach Company*, 364 Mo. 508, 263 S.W.2d 362, 365–67(1954), that where the

new trial order did not specify any grounds, the Court could not rely on the discretionary grounds stated in the trial court's separate memorandum. Because under Rule 1.10 (now Rule 84.05(c) and (d)), the lack of grounds in the new trial order required the Court to presume that the trial court erroneously granted the motion and not to presume that the new trial was granted on any discretionary grounds, the Court held that to resort to the memorandum to support the grant of a new trial on discretionary grounds would "countervail" or "dispute" the new trial order. *Id.* at 366.

After *Hammond*, however, the Court considered material in the record in interpreting a new trial order without stated grounds in *Ray v. Bartolotta*, 408 S.W.2d 838, 839–40 (Mo.1966). In *Ray*, the Court found that even though the trial court failed to specify its ground for granting a new trial in its order, the ground "sufficiently appear[ed] of record" because the new trial motion listed two grounds that were really the same one. *Id.* Since the Court was able to discern the basis of the new trial order from the new trial motion, the Court held that no presumption of error arose. *Id.* at 839.[2]

This court finds that the reasoning of *Ray* and *Hightower* applies here. The trial court's written docket-entry order did not set forth the bases for the court's granting the new trial. Thus, under *Hightower*, Rule 84.05(c)'s presumption of error arose.[3] The bases upon which the court

1. At the time *Hightower* was decided, this provision of Rule 84.05 was found in subsection (b), not (c).

2. More recently, the Supreme Court declined to take transfer of *Bishop v. Carper*, 81 S.W.3d 616, 620–21 (Mo.App.2002), a case in which this court discussed extensively the holdings in *Ray* and *Hightower* concerning the presumption of error where the grounds for

granting a new trial sufficiently appear from the record.

3. By stating its grounds for granting a new trial on the record in open court and referring to that record in its docket-entry order, it appears the trial court believed it was complying with Rule 78.03's requirement that the grounds for granting a new trial be specified "of record." Case law, however, has limited

granted the motion clearly appeared from the record, however. At the close of the hearing on the motion, the court specifically stated that it was granting the motion because it was "concerned about two points." The court went on to discuss in detail the two points, namely, the change in Dr. Swanson's opinion and the court's failure to give the hammer instruction in writing, and the prejudice that the court believed Ms. Pasalich suffered as a result. The court's discussion of these two bases for granting a new trial comprised over four pages in the transcript, and ended with, "That's going to be the order and ruling of the Court." In its docket-entry order, the trial court referred back to the statements it made during the hearing, stating, "Court makes record on issues." The court's grounds for granting the new trial appeared from the record and defined and limited the issues cognizable on appeal, as evidenced by Dr. Swanson's addressing in his brief only those two grounds out of the five grounds asserted by Ms. Pasalich in her new trial motion. Rule 84.05(c)'s presumption that the trial court's granting a new trial was erroneous was rebutted in this case. Dr. Swanson's first point is denied.

### Standard of Review

Having found that Rule 84.05(c)'s presumption of error was rebutted, this court applies the usual standard for reviewing the grant of a new trial. Rule 78.01 permits the trial court to "grant a new trial of any issue upon good cause shown." "The trial court has wide discretion in ruling on a motion for a new trial and is vested with substantial discretion over matters of fact in ruling on new trial motions." *Higgins v. Star Elec., Inc.,* 908 S.W.2d 897, 903

"of record" in Rule 78.03 to mean that which is written in the order or judgment. *See*

(Mo.App.1995). "[A]ppellate courts apply a rule of greater liberality in upholding a trial court's action in sustaining a motion for a new trial, than in denying it." *Cooper v. Ketcherside,* 907 S.W.2d 259, 260 (Mo.App.1995). Thus, when reviewing the grant of a new trial, this court is "to indulge every reasonable inference in favor of the trial court and may not reverse unless there has been a clear abuse of discretion." *McCormick v. St. Louis Univ., Inc.,* 14 S.W.3d 601, 605 (Mo.App. 1999). This court has discussed when an abuse of discretion occurs:

Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

*Anglim v. Mo. Pac. R.R.,* 832 S.W.2d 298, 303 (Mo. banc 1992).

### No Abuse of Discretion in Granting New Trial

In his second point, Dr. Swanson argues that the trial court erred in granting a new trial on the ground that Dr. Swanson changed his opinion as to what caused the damage to Ms. Pasalich between the time of his deposition and the time of the trial, without notifying Ms. Pasalich of his new opinion. Two years before the trial, Ms. Pasalich took Dr. Swanson's deposition. During the deposition, Ms. Pasalich's counsel asked his opinion as to why Ms. Pasalich developed pulmonary edema. Dr. Swanson replied that Ms. Pasalich devel-

*Hightower,* 590 S.W.2d at 103.

oped pulmonary edema "clearly from fluid administration."

At trial, however, Dr. Swanson testified that he no longer believed that Ms. Pasalich had suffered pulmonary edema from fluid administration. Dr. Swanson was called to testify during Ms. Pasalich's case in chief. In response to questions from Ms. Pasalich's counsel, Dr. Swanson testified that in the period shortly after Ms. Pasalich was hospitalized, he had diagnosed her with pulmonary edema due to fluid overload. When asked whether he still believed Ms. Pasalich had suffered pulmonary edema from fluid overload, however, Dr. Swanson responded that he did not. Ms. Pasalich's counsel did not object to Dr. Swanson's testimony at that time and instead asked Dr. Swanson questions on other issues.

After the lunch break, Ms. Pasalich's counsel asked Dr. Swanson more questions about his current opinion as to the cause of Ms. Pasalich's injury. Dr. Swanson testified that he currently believed that Ms. Pasalich did not have pulmonary edema at all and, in fact, had another condition known as atelectasis. Atelectasis, a condition in which the base of the lung collapses under its own weight, is a complication that can occur in as many as 40% of patients after major abdominal surgery.

When questioned further about the change in his opinion, Dr. Swanson acknowledged that in the report he prepared as the doctor who admitted Ms. Pasalich to the hospital following the surgery, he indicated she had symptoms consistent with pulmonary edema. Dr. Swanson also acknowledged that in his 1999 deposition, he had testified that Ms. Pasalich had pulmonary edema due to fluid overload. Nevertheless, he said that information he reviewed after his deposition caused him to change his opinion. Dr. Swanson testified that he formed this new opinion "within

the last couple of months" before trial and that he did not have his attorneys inform Ms. Pasalich's counsel about the change in his opinion. After Dr. Swanson offered his new opinion, Ms. Pasalich's counsel continued to examine him further on other issues.

During the afternoon break, however, Ms. Pasalich's counsel brought the change in Dr. Swanson's opinion to the trial court's attention and asked the court to strike Dr. Swanson's pleadings and defenses. Ms. Pasalich's counsel argued that, up until the trial, Dr. Swanson had led them to believe that his opinion was that Ms. Pasalich had pulmonary edema but that it "wasn't that big a deal." Counsel contended that Dr. Swanson's trial testimony was the first time in the six-year history of the case that Dr. Swanson ever said she had atelectasis, and counsel noted that even Dr. Swanson admitted that he had changed his opinion since his deposition. The trial court overruled Ms. Pasalich's objection and denied the motion to strike.

After the jury returned a verdict for Dr. Swanson, Ms. Pasalich included Dr. Swanson's failure to disclose the change in his opinion as a basis for her motion for new trial. In the motion, Ms. Pasalich asserted that Dr. Swanson had a duty to disclose that his expert opinion as to what caused her injuries had changed since his deposition, and this duty arose as soon as Dr. Swanson became aware of the change in his opinion, which Dr. Swanson admitted was before the trial.

Ms. Pasalich contended that Dr. Swanson's failure to disclose the change in his expert opinion at the time that it occurred caused her to suffer prejudice. Specifically, she argued that she had prepared her case for trial based upon Dr. Swanson's deposition testimony and had given her opening statement and presented all of her

other witnesses before Dr. Swanson disclosed the change.

Following a hearing on Ms. Pasalich's motion, the trial court stated, "There's no question and both sides admit that the defendant doctor in this case substantially and completely changed his opinion as to what caused the damage to the plaintiff and appeared to have done it in the course of trial." The court explained that it had overruled Ms. Pasalich's objection to Dr. Swanson's new opinion during the trial because it thought that Dr. Swanson, as the defendant, was different from the usual retained expert. Also, the court had overruled the objection during the trial because Ms. Pasalich's counsel had done a good job "taking on the doctor on the variances of his opinion and attacking his credibility," and the court thought that approach would "be a lot more successful in arguing to the jury than probably the change of opinion."

Nevertheless, the court stated that it "still had a problem with" the change in Dr. Swanson's testimony. The court went on to discuss the prejudice that it believed Ms. Pasalich suffered because of Dr. Swanson's new opinion:

The defendant did change his testimony. It was a change which could very well and probably did directly affect the third count, as you've all referred to it as, in deliberations of the jury.[4] I don't know whether they considered credibility as important as I did, but the fact that the defense went in with a very consistent position from all their experts as well as the defendant himself while the plaintiff believed they were going to

be submitting a rather inconsistent position on opinions pretrial could not only have been detrimental to the plaintiff, but could have very well misled the jury. . . .

Because of the resulting prejudice to Ms. Pasalich, the court determined that Dr. Swanson's failure to advise Ms. Pasalich before trial of the change in his opinion entitled Ms. Pasalich to a new trial.

■ Reviewing the trial court's decision for an abuse of discretion, this court first notes that Dr. Swanson was required to disclose the change in his opinion to Ms. Pasalich before trial. Rule 56.01(e)(2) requires a party to supplement written interrogatory responses when a response changes or becomes untrue.[5] In *Gassen v. Woy,* 785 S.W.2d 601, 603 (Mo.App.1990), this court held that a party has the same duty with regard to deposition answers. Here, Dr. Swanson testified as an expert, in addition to fact, witness. Dr. Swanson conceded during his testimony that he had changed his expert opinion as to the cause of Ms. Pasalich's injury between the time of his deposition and the trial and failed to disclose the change to Ms. Pasalich. "When evidence has not been disclosed in response to appropriate discovery, a trial court is vested with broad discretion as to its choice of a course of action and may, in the sound exercise of its discretion, reject such evidence or impose other appropriate sanctions." *Cooper,* 907 S.W.2d at 261.

Dr. Swanson asserts that the trial court's decision to grant a new trial because of his discovery violation was an abuse of discretion for several reasons.

---

4. Ms. Pasalich's "third count," or third theory of negligence, was that Dr. Swanson was negligent in the way that he administered fluids to her.

5. Rule 56.01(e)(2) provides:

(2) A party is under a duty to amend a prior response seasonably if the party obtains information upon the basis of which the party knows that the response (A) was incorrect when made or (B) though correct when made is no longer true.

Dr. Swanson first argues that Ms. Pasalich waived any objection she had to his failure to disclose his new opinion as to the cause of her injury. He notes that Ms. Pasalich did not object immediately after Dr. Swanson first indicated his opinion had changed and did not object during the court's lunch break thereafter. Instead, Ms. Pasalich waited to object until the court's afternoon break, after she had examined Dr. Swanson extensively regarding his new opinion and the basis for that opinion. Dr. Swanson argues that by not objecting at the earliest opportunity, Ms. Pasalich waived any objection she had to the admission of his new opinion. Also, Dr. Swanson notes that the relief Ms. Pasalich sought when she objected, which was to strike Dr. Swanson's pleadings and defenses and not simply his new opinion testimony, was disproportionate to his alleged discovery violation. Because Ms. Pasalich did not timely object to the new opinion and requested disproportionate relief in her objection, Dr. Swanson asserts that the court properly overruled the objection and erred in later granting a new trial.

■ Dr. Swanson's argument that the trial court erred in granting a new trial because Ms. Pasalich waived her objection by making an untimely or improper objection fails because of the procedural posture of this case on appeal. "There is a meaningful distinction between the denial of a new trial and the grant of a new trial." *Steward v. Goetz,* 945 S.W.2d 520, 527 (Mo.App.1997). This distinction affects whether a timely and proper objection to an error asserted in a new trial motion is required to sustain the trial court's ruling on the new trial motion on appeal:

> On appeal, when a party claims error because the trial court *denied* that party a new trial, the party ordinarily must have made a proper and timely objection to the claimed error to preserve it for

review; but, when, as here, a party claims error because the trial court *granted* the opposing party a new trial, the opposing party need not have made an objection to the error upon which the trial court granted a new trial. *Farley v. Johnny Londoff Chevrolet, Inc.,* 673 S.W.2d 800, 804 (Mo.App.1984). A trial court has the right, in the proper exercise of its discretionary power, to grant a new trial on account of any erroneous ruling, whether an objection has been made or not. *Beer v. Martel,* 332 Mo. 53, 55 S.W.2d 482, 485 (1932). *See* Rules 78.01 and 78.08.

*Id.* at 527–28.

Although the trial court in this case could have regarded Ms. Pasalich's claim of error as not preserved, the trial court was not required to invoke waiver against Ms. Pasalich to deny her request for a new trial on this basis. *See MFA Oil Co. v. Robertson–Williams Transp., Inc.,* 18 S.W.3d 437, 440 (Mo.App.2000). The trial court had the discretion to review its ruling regarding Dr. Swanson's failure to disclose his new opinion in violation of Rule 56.01(e)(2), regardless of whether Ms. Pasalich's objection during the trial was timely or requested the appropriate relief, and this court finds that the trial court did not abuse its discretion in doing so.

■ Dr. Swanson next argues that the trial court abused its discretion in granting Ms. Pasalich a new trial because after Dr. Swanson testified that his opinion had changed since his deposition, Ms. Pasalich elicited further testimony from him about his new opinion and repeatedly used it to establish that Dr. Swanson had "changed his testimony for trial." Dr. Swanson contends that Ms. Pasalich could not object to the admission of his new opinion evidence and then use the evidence later to her advantage.

This "dual benefit" argument was rejected by the Eastern District of this court in *Bailey v. Norfolk and Western Railway Company*, 942 S.W.2d 404 (Mo.App.1997). In *Bailey,* a defense expert changed his opinion after deposition and before trial without notifying the plaintiff. *Id.* at 414–15. The expert testified to this new opinion during the defense's direct examination. *Id.* at 416. On cross-examination, the expert conceded his opinion had changed since his deposition. *Id.* The trial court then struck the expert's new opinion from the record and instructed the jury not to consider the opinion in reaching its verdicts. *Id.* at 413.

On appeal, the defendant argued that the trial court's striking of the expert's new opinion testimony was not warranted in light of the plaintiff's cross-examination of the expert. *Id.* at 416. The defendant argued that by striking the testimony after the plaintiff had attempted to discredit the expert on cross-examination, the trial court gave the plaintiff "the best of two worlds." *Id.* The Eastern District rejected this argument, finding that if the plaintiff "received a dual benefit, it was deemed necessary by a failure to inform him before trial" of the change in the expert's opinion. *Id.* Likewise, in this case, although the trial court stated that it thought Ms. Pasalich's counsel had done a good job "taking on the doctor on the variances of his opinion and attacking his credibility," it still determined that a new trial was warranted in light of the prejudice Ms. Pasalich suffered from Dr. Swanson's failure to disclose the change in his opinion before trial.

■ Dr. Swanson contends that the trial court erred in finding prejudice because Ms. Pasalich could not have been surprised by the change in Dr. Swanson's testimony. In claiming lack of surprise, Dr. Swanson first notes that after he refused Ms. Pasalich's request to appear for a second deposition closer to trial, Ms. Pasalich declined his "invitation" to ask the court to order him to do so. Because Ms. Pasalich did not ask the court to order him to appear for a second deposition, Dr. Swanson asserts that Ms. Pasalich was aware of the position he was going to take at trial.

The record indicates that the only position of Dr. Swanson's of which Ms. Pasalich was aware before trial was the position he expressed in his deposition testimony. Moreover, Dr. Swanson's argument fails to recognize that the duty to supplement his deposition testimony fell upon him, not Ms. Pasalich. Rule 56.01(e)(2); *Gassen,* 785 S.W.2d at 603. Ms. Pasalich had the right to rely on the opinion Dr. Swanson expressed in his first deposition until notified otherwise, and her failure to ask the court to order that Dr. Swanson appear for a second deposition does not evidence a lack of surprise.

■ Dr. Swanson also argues that Ms. Pasalich could not have been surprised by his new opinion testimony because his counsel alluded to his new opinion in his opening statement. In his opening statement, Dr. Swanson's counsel stated:

Dr. Prosser, I think, came to the conclusion that he thought she had pulmonary edema, and you'll hear him talk about a working diagnosis. They think that's what it is. We believe the evidence will be, even though Dr. Swanson went along with that initially, that what probably she had what's called atelectasis which is a common complication after surgery and particularly abdominal.

Contrary to Dr. Swanson's assertion, this statement does not clearly indicate that Dr. Swanson *personally* no longer believed that Ms. Pasalich had pulmonary edema from fluid overload. Even if it did, however, Rule 56.01(e)(2) required Dr. Swanson to "seasonably" amend his prior opinion.

"Seasonably" means " 'within a reasonable time.' " *Clark v. Clark*, 805 S.W.2d 290, 296 (Mo.App.1991) (quoting BLACK'S LAW DICTIONARY 1212 (5th ed.1979)). "Whether an action is taken within a reasonable time is determined on a case-by-case basis." *Id.* The record indicates that Dr. Swanson formulated his new opinion during the "last couple of months" before trial. Amending his prior opinion in his opening statement was not within a reasonable time.

■ Finally, Dr. Swanson contends that Ms. Pasalich could not have been surprised by his new opinion because she was aware before the trial that Dr. Swanson's plastic surgery expert and his radiology expert were going to testify that Ms. Pasalich did not suffer pulmonary edema from fluid overload. That Dr. Swanson's other expert witnesses were going to testify that Ms. Pasalich did not suffer pulmonary edema from fluid overload did not put Ms. Pasalich on notice that *Dr. Swanson* was going to change his opinion after his deposition to match those of his experts. Indeed, Ms. Pasalich's counsel argued in the hearing on the motion for new trial that his trial strategy was going to be to emphasize that, regardless of what Dr. Swanson's other experts believed caused Ms. Pasalich's injury, Dr. Swanson himself believed that it was caused by pulmonary edema from fluid overload. Ms. Pasalich's counsel argued that had he known that Dr. Swanson himself was going to testify that Ms. Pasalich had suffered from atelectasis, he would have presented evidence through Ms. Pasalich's expert, who testified before Dr. Swanson did, that the diagnosis of atelectasis was "flat wrong."

In granting Ms. Pasalich's motion for new trial, the trial court found that the change in Dr. Swanson's opinion "could very well and probably did directly affect" the jury's deliberations on Ms. Pasalich's claim that Dr. Swanson was negligent in the way in which he administered fluids to her. Specifically, the court found that Dr. Swanson's failure to disclose his new opinion affected the way in which Ms. Pasalich prepared for trial, as she went into trial believing that Dr. Swanson's opinion was going to be inconsistent with that of his experts. Additionally, the court found that Dr. Swanson's change in his opinion also could have impacted the jury's perception of the parties' credibility, since Dr. Swanson and all of his experts offered consistent opinions as to the cause of Ms. Pasalich's injury. In light of the impact of Dr. Swanson's failure to disclose his new opinion on Ms. Pasalich's trial strategy and presentation of her case, this court finds that the trial court did not abuse its discretion in concluding that Ms. Pasalich suffered prejudice entitling her to a new trial.

The resolution of this issue is dispositive of the appeal and makes it unnecessary to address Dr. Swanson's third point. The order granting Ms. Pasalich's motion for new trial is affirmed.

All concur.