**Amanda EAGAN and Bill Eagan, Appellants,**

v.

**Deborah K. DUELLO, M.D., et al, Respondents.**

No. WD 64857.

Missouri Court of Appeals, Western District.

Aug. 30, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 2005.

Application for Transfer Denied Nov. 1, 2005.

James M. Roberts, Blue Springs, for appellants.

Bryan T. Pratt, Kansas City, for respondents.

RONALD R. HOLLIGER, Presiding Judge.

Amanda Eagan and Bill Eagan (the Eagans) appeal a jury verdict for Dr. Deborah Duello of their medical malpractice claim for injuries Mrs. Eagan sustained after an episiotomy repair following the birth of their daughter. The Eagans raise two points of trial court error: (1) that the trial court erred in allowing expert opinion testimony that was undisclosed prior to trial, and (2) that the trial court erred in excluding certain lay testimony on the basis that it was within the province of expert opinion. Affirmed.

### Facts

Dr. Duello was Mrs. Eagan's obstetrician for the delivery of her daughter. When Mrs. Eagan ran past her due date the decision was made to induce labor. During labor, Dr. Duello made the decision to perform an episiotomy. An episiotomy

is a surgical incision made between the bottom of the vagina and the top of the rectum in order to facilitate the delivery of the baby and prevent tearing of the mother's tissue during the birth process. Depending upon the size of the incision, an episiotomy can be large enough to injure the rectal wall. The procedure is done, generally, because currently accepted medical practice is that it is preferable to repair a surgical incision rather than a jagged tear resulting from the birth process.

Shortly after the birth, Dr. Duello performed a repair of the episiotomy. A number of people were present in the delivery room during the process including Bill Eagan and Bill's sister Rebecca Roncelli. Mrs. Eagan had a proper bowel movement in the hospital subsequent to the surgery. Nursing staff visually inspected the episiotomy repair while Mrs. Eagan was in the hospital and she was discharged a few days later.

Three days later Mrs. Eagan had a bowel movement that felt unusual. When she examined herself in the mirror she discovered stool coming through the area where the sutures were placed. The sutures had broken loose resulting in a dehiscence, or a break along the suture line, of the rectal tissue. She saw Dr. Duello the next day and again two weeks later but the wound did not heal. Dr. Duello then referred her to Dr. John Heryer, a colorectal surgeon for further treatment. Dr. Heryer treated the dehiscence, and eventually released her with no restrictions on any activities in October of 1998.

The Eagans later filed suit against Dr. Duello alleging negligent repair of the episiotomy. At trial, the Eagans alleged and produced evidence that Dr. Duello deviated from the standard of care by failing to properly repair Amanda Eagan's episiotomy resulting in significant discomfort and pain for her. Dr. Duello called Dr. Larry Batty as an expert witness who testified that Dr. Duello's treatment was appropriate and within the standard of care. The jury returned a verdict in favor of Dr. Duello. This appeal follows.

## Discussion

### I

The Eagans argue in their first point on appeal that a portion of the testimony of Dr. Duello, the treating physician, and Dr. Batty, the expert witness for the defense, represented "additional undisclosed expert opinion testimony." The Eagans maintain that case law prohibits the undisclosed opinion testimony of both doctors and that, therefore, they are entitled to a new trial. Arguing as such, the Eagans have lumped two distinct arguments together because the substance of what Duello and Batty said at trial is dissimilar in addition to being governed by different standards of review. Duello's allegedly objectionable testimony was objected to at trial, Batty's was not. Accordingly, they require separate analysis.

Rule 56.01(e)(2) requires a party to supplement written interrogatory responses when a response changes or becomes untrue. In *Gassen v. Woy,* 785 S.W.2d 601, 603–04 (Mo.App.1990), this court extended that duty to apply to answers given in a deposition. The Eagans rely on *Pasalich v. Swanson,* 89 S.W.3d 555 (Mo.App.2002), and *Whitted v. Healthline Management, Inc.,* 90 S.W.3d 470 (Mo.App.2002), in support of their argument that Drs. Duello and Batty violated that duty to supplement their deposition responses. Both cases illustrate the underlying principles and the mechanics of enforcing the rule prohibiting undisclosed opinion testimony.

*Pasalich* was a medical malpractice case resulting in a jury verdict in favor of the defendant doctor who, at his deposition,

had stated that the plaintiff's condition had been caused by fluid administration. *Id.* at 560. Later at trial, however, without informing opposing counsel, the defendant stated that he had changed his opinion about causation based on information he reviewed after his deposition. *Id.* Plaintiff's counsel then requested that the testimony be struck, but the trial court initially ruled that that rule prohibiting new opinion evidence did not apply to defendants. *Id.* at 560–61. Later, after a verdict for the defendant, the trial court reversed its position and granted a new trial stating that under Rule 56.01(e)(2) the defendant, like any other expert, was required to disclose the change in his opinion prior to the beginning of trial. *Id.* This court, finding no abuse of discretion, affirmed the trial court's decision. *Id.* at 564.

In *Whitted*, an expert witness for the defense stated in his deposition that he could not pinpoint whether the patient's death was caused by one of two conditions. 90 S.W.3d at 477. Then at trial the expert unequivocally testified that the cause of death was a third, wholly unrelated condition than the two conditions discussed at his deposition. *Id* at 476–77. The trial court granted the plaintiff's motion for a new trial based upon the expert's change of opinion at trial without informing opposing counsel to the resulting prejudice of the plaintiffs. *Id.* at 474. The court of appeals found that the trial court's granting of a new trial was within its discretion because the "[e]xpert's deposition and trial testimony clearly contradict[ed] each other" and his "testimony expressed an entirely different set of opinions than those offered at his deposition." *Id.* at 477.

*Dr. Duello's testimony:*

 The standard of review governing the admissibility of Dr. Duello's testimony is an abuse of discretion. "The admissibility of evidence, including the testimony of an expert, is a matter within the discretion of the trial court." *Blake v. Irwin*, 913 S.W.2d 923, 931 (Mo. App.1996).

> Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

*Cooper v. Ketcherside*, 907 S.W.2d 259, 260 (Mo.App.1995) (citations omitted). As mentioned above, when an expert changes his or her opinion after being deposed but prior to trial, the party intending to use that expert's testimony has the duty to disclose the new information to the opposing party. *Green v. Fleishman*, 882 S.W.2d 219, 221 (Mo.App.1994). The stated policy behind this notion is to prevent experts from changing their opinions without notice to the opposition prior to trial, thus frustrating the purpose of the discovery rules and resulting in concealment and unfair surprise. *See Bailey v. Norfolk & W. Ry. Co.*, 942 S.W.2d 404, 415 (Mo.App. 1997). The trial court enjoys broad discretion in determining its options when evidence appears during trial that has not been disclosed in response to appropriate discovery. *Green*, 882 S.W.2d at 222. It is within the trial court's discretion to reject such evidence or to impose other appropriate sanctions. *Id.*

At her deposition Dr. Duello testified in relevant part as follows:

> [Eagans' attorney]: Was there anything about Ms. Eagan's medical history, including her gynecologic history, including the treatment you provided her for endometriosis, that caused or in any

way contributed to cause her episiotomy dehiscence? ...

[Duello]: There are several possibilities of what could have been associated with this. I don't know exactly what caused it.

[Eagans' attorney]: Can you tell me what those possibilities are, please?

[Duello]: Certainly. Infection, particularly viral infections, like human papillomavirus; hemorrhage or hematoma formation; necrotic tissue; some people just don't heal, have poor healing; a possible allergic reaction to suture material; a possible failure of suture material; intercourse; trauma to the area. A lot of factors that could affect it.

[Eagans' attorney]: Do you have an opinion as to why Mrs. Eagan suffered this dehiscence?

[Duello]: I really don't know. I think there was probably a combination of several factors. The fact that it was—it stayed intact at the hospital and it was okay until, what, five, almost six days postpartum makes me think that it was actually a wound healing problem. That's when the wound is the weakest, after any type of repair. And then, maybe with the hard bowel movement, maybe just with that pressure, the stitches ripped through. I don't—I can't tell you for sure, but that's what I think may have happened.

The Eagans protest that after Dr. Duello gave such testimony in her deposition, at trial she was allowed "to testify at length about other possible causes of the episiotomy dehiscence..includ[ing] a lengthy discourse on the effects of human papillomavirus despite the fact that [Duello] admitted on cross-examination that she could not state within a reasonable degree of medical certainty that Amanda Eagan even had human papillomavirus at the time

of delivery." At trial, Duello testified in relevant part:

[Duello's attorney]: Now, Doctor, what—in your experience, training and education, what are the possible causes that led to Mrs. Eagan's laceration repair breaking down?

[Duello]: I'm not sure we'll ever know what really happened here, but there are many possibilities.

■■■ Dr. Duello goes on to name, in response to questioning, virtually every possible cause for Amanda Eagan's dehiscence that she named in her deposition. Similar to her deposition response, she identified healing problems, suture failure, suture allergy and human papillomavirus as possible causes of Eagan's dehiscence. Dr. Duello maintained consistently throughout trial, as she did in her deposition, that she did not know the actual source of Mrs. Eagan's dehiscence and at no time pointed to a specific cause for her resulting medical problems. Her testimony at trial was neither new nor contradictory to what it was in her deposition, thus rendering this case inapposite to the facts of *Pasalich* and *Whitted*. To the extent that Dr. Duello's testimony was different at all, it was, perhaps, more expansive in that she explained many of the possible causes that she named in her deposition. This difference alone, however, does not fall within application of the rule prohibiting undisclosed opinion testimony. "Testimony, even when phrased in the form of an opinion, that interprets or supports opinions contained in depositions is not improper." *Blake v. Irwin*, 913 S.W.2d 923, 931–32 (Mo.App.1996).

■■■ The trial court held that the rule from *Gassen* did not apply to a defendant who was offering expert testimony. The trial court's rationale was incorrect. *See Pasalich*, 89 S.W.3d at 564. Although the trial court's rationale in allowing the evi-

dence (that a defendant is not subject to the rule prohibiting undisclosed opinion testimony) was flawed, that does not mean that the admission of the testimony was incorrect. Allowing Dr. Duello at trial to explain the possible causes she named in her deposition was not so arbitrary and unreasonable as to indicate a lack of careful consideration by the trial court and, therefore, it was not an abuse of discretion to allow the testimony.

*Dr. Batty's testimony:*

The Eagans also allege that the defense expert, Dr. Batty, changed his opinion about causation between his deposition and trial without notifying opposing counsel. The Eagans contend that at Dr. Batty's deposition, Batty "testified unequivocally that the one and only cause of the dehiscence of Amanda Eagan's episiotomy was infection." In support of this contention, the Eagans point to Batty's trial testimony where this exchange took place:

> [Eagans' attorney]: Is it your testimony that the only thing in this case that caused the dehiscence of the episiotomy repair was an infection?
>
> [Batty]: No, it's not.

The Eagans concede that they failed to object to the allegedly undisclosed opinion testimony of Dr. Batty but contend that, nevertheless, it is not subject to plain error review because of their objection to Dr. Duello's testimony. We disagree. Dr. Duello's testimony was permitted for an entirely different reason, albeit erroneous. "Appellate courts rarely grant plain error review in civil cases." *Verbrugge v. ABC Seamless Steel Siding, Inc.,* 157 S.W.3d 298, 303 (Mo.App.2005). "We reserve such review for cases in which hatred, passion or prejudice has been produced, resulting

in a manifest injustice or miscarriage of justice." *Id.* If an appellate court grants plain error review, it should first examine whether the claim of plain error is one that, on its face, establishes substantial grounds for believing that manifest injustice or miscarriage of justice has occurred. *Gill Constr., Inc. v. 18th Vine Auth.,* 157 S.W.3d 699, 723 (Mo.App.2004). If plain error is facially established, the appellate court should then review the claim "to determine whether manifest injustice or a miscarriage of justice actually occurred." *Id.*

Our review of the entire record reveals that no such manifest injustice took place by allowing Dr. Batty's disputed testimony.[1] A reading of his deposition and trial testimony together in their entirety shows that they were consistent with each other. Indeed, during his deposition Dr. Batty stated that infection was the sole cause of Mrs. Eagan's dehiscence, yet he also stated that her bowel movement, subsequent to surgery, was an "inciting factor." Dr. Batty's trial testimony, taken in context, reads as such:

> [Eagans' attorney]: Is it your testimony that the only thing in this case that caused the dehiscence of the episiotomy repair was an infection?
>
> [Batty]: No, it's not.
>
> [Eagans' attorney]: Doctor, do you recall when I took your deposition?
>
> [Batty]: Yes.
>
> [Eagans' attorney]: I'm going to hand you a copy of that deposition which should reference the date it was taken, do you recall it was May 17, 2001?
>
> [Batty]: It sounds good.

1. Additionally we note a practical consideration in such a case as this. The Eagans attempted to impeach Dr. Batty with alleged inconsistencies between his deposition and trial testimony. It is a fair assumption that this was a tactical decision.

[Eagans' attorney]: I want to draw your attention to page 69 of your deposition and specifically starting on line 19. Did I ask you the question, "Do you have an opinion as to whether any of those items listed caused the dehiscence of Amanda Eagan's episiotomy?" Do you see that question?

[Batty]: Yes.

[Eagans' attorney]: What was your answer?

[Batty]: "Yes."

[Eagans' attorney]: And was the next question, "What is your opinion in that regard?" What was your answer to that?

[Batty]: "Infection."

[Eagans' attorney]: Do you see the next question, "And is that the only one?" Do you see that question?

[Batty]: Yes.

[Eagans' attorney]: And what was your answer, sir?

[Batty]: "Yes."

[Eagans' attorney]: So at the time I took your deposition, you advised me that the only reason there was a dehiscence here was an infection; is that correct?

[Batty]: *Well, I think the record goes on to state that I think the complicating factor of the bowel movement was involved also.* (Emphasis added).

■ Reading the entire transcripts together, it is clear that Batty did not change his opinion as to the cause of Amanda Eagan's dehiscence. He maintained in his deposition and at trial that it was the likely result of a bacterial infection, yet in both instances he also allowed that Mrs. Eagan's bowel movement was an additional factor. We find no manifest

injustice resulting from the trial court's failure to *sua sponte* exclude Dr. Batty's trial testimony. Point denied.

**II**

■ In Point II the Eagans argue that the trial court erred in refusing to allow certain testimony from lay witnesses on the basis that such testimony was within the province of expert opinion. Generally, a trial court's decision to exclude testimony is reviewed for an abuse of discretion, granting substantial deference to the trial court's decision. *Jones v. Grant,* 75 S.W.3d 858, 862 (Mo.App. 2002). When reviewing allegations of improperly excluded testimony "[t]he focus is not on whether the evidence was admissible but on whether the trial court abused its discretion in excluding the evidence." *Id.* Even if the exclusion of testimony is erroneous, we will not reverse the judgment absent a finding that the error "materially affected the merits of the action." *Id.;* Rule 84.13(b).

■ The Eagans argue that the rejected testimony was not opinion testimony at all and that the trial court thus erred in treating it as an attempt to introduce expert testimony through an unqualified lay witness.[2] The Eagans contend that the excluded testimony merely showed what the witnesses observed and heard and was, therefore, admissible. *Elmahdi v. Ethridge,* 987 S.W.2d 366, 372 (Mo.App.1999). The Eagans point this court to four allegations of improperly excluded testimony. We address each in turn.

First, they argue that Bill Eagan, and his sister, Rebecca Roncelli, were improperly prevented from offering testimony regarding the length of time it took Dr. Duello to complete the surgical repair of

---

**2.** Of course under certain circumstances a lay witness can introduce opinion testimony. *See*

*Skaggs v. Aetna Life Ins. Co.,* 884 S.W.2d 45, 47 (Mo.App.1994).

Amanda Eagan's episiotomy. Specifically, they allege that Mr. Eagan and Ms. Roncelli should have been allowed to testify to the amount of time that elapsed from the moment Dr. Duello placed the first stitch in Amanda Eagan's body to the moment when she placed the last stitch. In sustaining Dr. Duello's objection to such testimony, the trial court stated that it would be improper to allow lay testimony about the duration of a medical procedure. Both Mr. Eagan and Ms. Roncelli made an offer of proof testifying that the duration of the procedure was between four and five minutes.

▬▬▬ Expert opinion testimony is testimony that will aid the trier of fact in understanding the evidence or deciding a fact in issue that is offered by a witness based on the witness' education, knowledge, skill, experience or training. Section 490.065, RSMo. (2000). Expert opinion testimony is usually based upon facts that the expert did not personally observe or of which the witness has no personal knowledge. "[A]n appellate court will generally not review evidence excluded by a trial court unless a specific and definite offer of proof was made at trial showing what the evidence will be, the *purpose and object of the evidence*, and each fact essential to establishing the admissibility of the evidence." *Terry v. Mossie*, 59 S.W.3d 611, 612 (Mo.App.2001) (emphasis added). The Eagans made no attempt during their offer of proof nor here on appeal to demonstrate why the duration of the procedure is relevant to any fact at issue during trial (for instance, that performing the surgery and repair of the episiotomy in four or five minutes would deviate from the standard of care).

▬▬▬ We do not believe that this particular testimony constituted opinion testimony at all, let alone expert opinion testimony. The trial court's rationale for

excluding the testimony was, therefore, incorrect, but that error does not necessarily require reversal. Although Ms. Roncelli expressed her answer in terms of her opinion about the length of the procedure, the word "opinion" does not make her testimony inadmissible. "Lay witnesses may couch their testimony in convenient shorthand even if it sounds like an opinion." *State ex rel Nixon v. Telco Directory Publ'g.*, 863 S.W.2d 596, 599 (Mo. banc 1993). It is clear that both Mr. Eagan and Ms. Roncelli testified that they were present during the entire time and saw the first stitch and the last stitch. Their proffered testimony was based on what they saw and should not have been excluded as expert opinion testimony.

▬▬▬ Our inquiry does not end there, however, as we must determine the prejudicial effect of the erroneous exclusion of this evidence. *Still v. Ahnemann*, 984 S.W.2d 568, 572 (Mo.App.1999). The Eagans fail to satisfy their burden to show that the improper exclusion was prejudicial. They present no persuasive argument that the length of the procedure was directly relevant to an issue of negligence or that their expert's testimony was hampered or undermined in any way by the absence of this evidence. We do not believe that the trial court's ruling on the issue "materially affected the merits of the action." Rule 84.13(b).

▬▬▬ The Eagans argue next that the trial court erred in excluding testimony from Bill Eagan and Ms. Roncelli that they did not observe Dr. Duello perform a digital examination of Amanda Eagan's rectum at any time following the surgery. Again the trial court excluded the proposed evidence on the basis that it invaded the province of expert testimony. Both witnesses made an offer of proof that they were in the room during the birth and

subsequent surgical repair and that neither observed Dr. Duello place a finger in Amanda Eagan's rectum at any time. The Eagans argue that a witness need not be a medical expert in order to testify about whether they saw a rectal exam performed because the exam involves merely placing a finger up the patient's rectum. Again, we agree that the trial court erred in excluding this evidence. Whether or not a fact exists or an event occurred may be shown by testimony of a lay witness with the opportunity and means to observe that they did not see or hear the matter in question. *See Morris v. Israel Bros. Inc.,* 510 S.W.2d 437, 441 (Mo.1974). Such so-called "negative evidence" is often vital in proving whether an event occurred. We cannot see how whether the two witnesses *saw* a penetration of Dr. Duello's finger constituted expert testimony.

The Eagans maintain on appeal that the purpose of this testimony goes to establishing negligence, because, they allege, the failure to do a digital exam indicates a deviation from the standard of care when performing an episiotomy. We observe that upon his direct exam the Eagans' liability expert never testified that the performance of a digital exam was required by the standard of care, although he said that he always does one. Dr. Duello's attorney established, however, on cross-examination that the standard of care requires a digital exam. We have not been provided with the jury instructions on appeal, but it appears that the verdict director submitted two specifications of negligence. First, that Dr. Duello failed to diagnose and repair a laceration to the rectal mucosa or secondly, that she failed to adequately repair the external anal sphincter by not placing the sutures into the capsule surrounding the sphincter. No relationship between the failure to perform a digital exam and these submitted theories is shown by the testimony of experts in the case or the argument of coun-

sel. The limited expert testimony was that the exam is done to see if things feel right. We do not believe that a significant enough relationship between the alleged failure to digitally examine and the Eagans' actual theories of negligence is apparent in order to find prejudice from excluding the testimony. Here on appeal, it would require speculation to determine for our prejudice analysis that such an exam would have revealed the deficiencies in Dr. Duello's care of which the Eagans complain. We also note that evidence of the failure to perform a rectal exam was introduced through Amanda Eagan's testimony, and, generally, the exclusion of cumulative evidence will not be considered prejudicial error on appeal. *Uxa ex rel. Uxa v. Marconi,* 128 S.W.3d 121, 131 (Mo. App.2003). We find that the Eagans were not prejudiced by the improper exclusion of this evidence.

Next, the Eagans argue that the trial court erred in excluding testimony from Bill Eagan about the hand motions that Dr. Duello made when performing the surgical repair on Amanda Eagan. Mr. Eagan made an offer of proof where he apparently demonstrated to the trial court his recollection of Dr. Duello's hand movements in performing the surgery. The Eagans made no attempt either during their offer of proof nor on appeal to demonstrate why Mr. Eagan's recollection of Dr. Duello's surgical motions were relevant to the establishment of any fact at issue during trial. *See Mossie,* 59 S.W.3d at 612. Regardless, we find no abuse of discretion in excluding from the jury Mr. Eagan's reproduction of surgical methods of which he has no training or expertise.

Finally, the Eagans claim that the trial court erred in excluding testimony from Amanda Eagan that she had no signs of an infection after her hospital discharge. No offer of proof was made, and we could dispose of the issue on that

deficiency alone. "Nothing is preserved for appellate review when a court rejects evidence, in the absence of an offer of proof." *Id.* at 613. We agree, nevertheless, that a lay witness is not qualified to express an opinion as to whether she had or did not have an infection. Such a witness is, however, permitted to testify as to his or her own observations about the appearance and symptoms experienced by the witness. And, in fact, after the objection was sustained the witness did testify about such types of symptoms.[3] In any event, we do not believe the trial court abused its discretion in finding that Mrs. Eagan, as a non-medically trained layperson, was not qualified to testify whether certain physical signs or symptoms were caused by an infection. Point II is denied.

The judgment is affirmed.

ROBERT G. ULRICH, Judge, and JOSEPH M. ELLIS, Judge, concur.

---

[3.] We also note that a lay witness may testify in the form of a lay opinion that in shorthand describes a bodily condition (such as the area looked infected). *See Garvis v. K–Mart Dis-*

---

*count Store,* 461 S.W.2d 317, 322 (Mo.App. 1970). That was not the question asked of Mrs. Eagan.