Mike **DEMMAS** and Flora Demmas, Plaintiffs-Appellants,

v.

**ST. LOUIS OUTDOOR ADVERTISING, INC.**, a corporation, Defendant-Respondent.

Nos. 33173, 33183.

St. Louis Court of Appeals, Missouri.

Feb. 24, 1970.

Thomas, Busse, Weiss, Cullen & Godfrey, Carl R. Gaertner, Spencer Thomas, St. Louis, for plaintiffs-appellants.

Sherwood R. Volkman, St. Louis, for defendant-respondent.

PER CURIAM.

This appeal presents two issues: The sufficiency of the evidence to make a case of actionable fraud, and the propriety of the trial court's order granting defendant a new trial on the ground that the verdict was not supported by evidence concerning plaintiffs' damages.

Plaintiffs Mike and Flora Demmas sued defendant sign company for fraud and got a verdict for $5,000 actual and $2,500 punitive damages. Plaintiffs contend defendant's negotiator had induced them to lease an outer wall of their store building for an advertising sign by falsely representing that the written lease gave plaintiffs the right to cancel on thirty days' notice; that relying on this representation plaintiffs contracted to sell the building free of defendant's sign and sold their fixtures and merchandise, but then discovered defendant's lease could not be canceled; that their prospective purchaser refused to buy the building because of defendant's sign thereon.

After the verdict and judgment for plaintiffs the court denied defendant's after-trial motion for judgment but granted its alternative motion for a new trial on grounds concerning damages. Plaintiffs appeal from the new trial order.

The defendant has also appealed, uneffectively, from the order denying its after-trial motion for judgment and now concedes it is not aggrieved by that order since it was granted a new trial. The effect of dismissing defendant's appeal is academic; its basis was a challenge to the submissibility of plaintiffs' case. This contention was preserved in defendant's after-trial motion so we will examine the evidence to determine whether plaintiffs made a case. Schmittzehe v. City of Cape Girardeau, Mo., 327 S.W.2d 918[1].

■ Defendant challenges only six essential elements of actionable fraud. For all nine elements see Gonseth v. K & K Oil Co., Mo.App., 439 S.W.2d 18[11]. To test this challenge we recite the verdict-consistent evidence concerning these six elements.

Plaintiff Mike Demmas was born in Greece about 1900. He had only four years' schooling there and none after immigrating to this country in 1923. Except for a few words he never learned to read English. Mr. Demmas and his wife ran a food store, and when necessary she read business papers to him.

In 1947 plaintiffs bought an unimproved building on Hampton Avenue in St. Louis and fitted it for their store. From time to time they did business with Mr. Roy C. Carraway, defendant's lease negotiator, granting five-year leases for signboards on their building. Mr. Demmas recalled that these leases gave each party the right to cancel on thirty days' notice. In 1953 and again in 1961 defendant removed its signs at Mr. Demmas' request.

On May 28, 1965, while Mr. Demmas was alone at the store, Mr. Carraway came to negotiate another five-year lease. Mr. Demmas noticed that the proffered lease called for $75 annual rental instead of $100 (he could read numerals since they are the same in Greek as in English), and Mr. Carraway thereupon changed and initialed the amount. Mr. Demmas told Mr. Carra-

way he could not read and would trust him "to tell what the lease said." Upon direct inquiry Mr. Carraway told Mr. Demmas the lease provided for removal of the sign on thirty days' notice. ("He told me thirty days I would have my building free to do anything I want to * * * same like before.") Having confidence in Mr. Carraway from previous dealings, Mr. Demmas believed him and signed the lease.

In fact, the lease gave Mr. and Mrs. Demmas the right to cancel on thirty days' notice only if they had commenced construction of a permanent, substantial building requiring the removal of defendant's sign. This clause brought on plaintiffs' troubles.

Mr. and Mrs. Demmas had been considering retirement and in October, 1965, four months after signing defendant's lease, they decided to sell their store. They signed a written contract to sell the building to Mr. Joe H. Scott. Still believing defendant would remove its sign on thirty days' notice, Mr. and Mrs. Demmas agreed in their sales contract with Mr. Scott to have the sign removed and to surrender possession by December 1, 1965. Mr. Demmas immediately notified defendant to remove its sign. Plaintiffs then began selling their store fixtures and merchandise, at a loss hereafter described. The defendant refused to remove its sign and Mr. Scott declined to go through with the sale for that reason.

We find this evidence entitled the jury to believe each of the six challenged elements of actionable fraud.

■ *First,* there was evidence Mr. Carraway made a representation about the thirty-day cancellation clause: "same like before", referring to previous leases and two previous sign removals on thirty days' notice. *Second,* the representation was false. The actual cancellation clause was hedged with a condition; it was not "same like before". *Third,* Mr. Carraway knew the representation about the cancellation

clause was false. For twenty years he had negotiated sign leases—six years for this defendant—and knew of differences in sign leases. We reject defendant's brittle argument that plaintiffs failed on this element since they did not prove Mr. Carraway could read. *Fourth,* Mr. Carraway was a lease negotiator and his job was to persuade owners to sign leases. During negotiations Mr. Demmas specifically inquired about termination, an essential element of the lease. Since intent is shown by words and deeds, the jury could infer that Mr. Carraway intended for Mr. Demmas to act on his responsive representation about the thirty-day cancellation clause. *Fifth,* whether Mr. Demmas was ignorant of the falsity of Mr. Carraway's statement about the cancellation clause depended on whether Mr. Demmas read the lease. He testified he did not and could not read it. The jury could believe Mr. Demmas was unaware of the discrepancy between the lease and what Mr. Carraway represented it to be. *Sixth,* we reject defendant's contention that Mr. Demmas had no right to rely on Mr. Carraway's statement because the means of knowledge were equally available to both parties. ·Their means were not equal. Further, in a business transaction where a distinct representation is made to induce action, and does induce action, the recipient cannot be faulted for failure to investigate. Tietjens v. General Motors Corp., Mo., 418 S.W.2d 75[4]; Restatement of the Law of Torts § 540.

From all this we deny defendant's challenge to the sufficiency of plaintiffs' evidence to show actionable fraud. This leads to the issue raised by plaintiffs' appeal: That the trial court erred in granting defendant a new trial on the ground the $7,500 verdict was unwarranted by the evidence concerning plaintiffs' damages.

Plaintiffs' claim to damages is that the sale of their building was thwarted by defendant's fraud and this in turn caused them to sell their merchandise and equipment at a sacrifice and put them out of business for eleven months. Only plaintiff

Mike Demmas testified about this. He said he sold the merchandise and fixtures so he could get out of the building: "Q After you arranged to sell your store, your property to Mr. Scott, what did you do with the merchandise? A Put it half price, get some company and sold the fixtures, low price, so I could be empty at the 1st of December according to the contract. Q How long did it take you to sell out? A Month's time. Q Will you tell us what your merchandise was worth and what you sold it for in that month? A Merchandise worth about $6000.00. Q How much did you get for it? A Half price. Q How about the fixtures, scales, ice boxes and things, what did you do? A Fixtures was worth $2500.00, sold to one fellow $275.00, one $70.00 and other $30.00. Q So they were all worth $2500.00 and you sold them— A Two hundred—$385.00. Q $385.00? A Yes." Concerning the business, he said: "Q So, am I correct, that from November of 1965, until about a year ago, October of 1966, you did not have any business? A I did not have no business. Q Before you closed this business out, this food store, how much money were you making in it? A $85.00 a week; $85.00 a week."

After plaintiffs got the verdict for $5,000 actual and $2,500 punitive damages the trial court granted defendant a new trial on these grounds:

"11. Because the verdict of the jury as to plaintiffs' damages [was] against the weight of the evidence, to wit: a) That the Plaintiffs did not present any competent evidence as to the loss of damages. b) That the Plaintiffs did not prove there were any damages whatsoever. * * *"

"13. Because the jury was mistaken in understanding and interpreting the evidence as to Plaintiffs' damages in rendering its verdict."

Was this new trial ruling one of law, that is, on the legal *sufficiency* of

plaintiffs' damage evidence, or was it a ruling of fact, that is, on the *weight* of that evidence? If a ruling of law, i.e., the sufficiency of evidence, the trial court had no discretion, but if it was a ruling of fact, i.e., the weight of evidence, the trial court was exercising its discretion and we must honor that discretion unless it was abused. Cooper v. 804 Grand Bldg. Corp., Mo., 257 S.W.2d 649[7]; Maddox v. Vieth, Mo.App., 368 S.W.2d 725[5, 6].

■ If the trial court granted the new trial on the ground the $7,500 verdict was excessive that is equivalent to granting it on the ground that the verdict was against the weight of evidence. Combs v. Combs, Mo., 295 S.W.2d 78[2, 3]; Bierman v. Langston, Mo., 304 S.W.2d 865[3]. The question requires an interpretation of the trial court's order. In this we are guided by Donati v. Gualdoni, 358 Mo. 667, 216 S.W.2d 519[7]: "* * * in reviewing the action of the trial court in sustaining the motion [for a new trial], the appellate court will give the specified ground a broad and liberal construction. Beer v. Martel, 332 Mo. 53, 55 S.W.2d 482." See also Bierman v. Langston, Mo., 304 S.W.2d 865[8].

■ Ground 11 is ambiguous. It first says the verdict was against the weight of the evidence. This presents a factual issue calling for exercise of the trial court's discretion. In contrast, sub-paragraphs (a) about no competent evidence and (b) about no proof of damages, seem to present legal questions, non-discretionary grounds. See Bierman v. Langston, Mo., 304 S.W.2d 865[4]. Ground 13 illuminates the ambiguity. It indicates the trial court was exercising its discretionary authority to weigh the evidence. Note: "Because the jury was mistaken in understanding and interpreting the evidence as to Plaintiffs' damages in rendering its verdict." That ruling passed on the weight of plaintiffs' evidence to support the essential element of damages. Giving both grounds 11 and 13 "a broad and liberal construction" we hold

that the trial court granted defendants a new trial on a discretionary ground.

That was the result we reached in the parallel case of Ponyard v. Drexel, Mo. App., 205 S.W.2d 267. There the trial court granted defendant a new trial on the grounds there was "no sufficient evidence" to support plaintiff's verdict directing instruction, and also that plaintiff's evidence was "confusing and unsatisfactory." That parallels our case where the stated grounds said there was not "any competent evidence" and also that the jury misunderstood the evidence about plaintiffs' damages. In *Ponyard* we said that although a court "* * * would ordinarily be expected to use the term 'sufficient' evidence as synonymous with 'substantial' evidence, the circumstances of a particular case may nevertheless be such as to indicate that it employed the term in the sense of characterizing the weight of the evidence. In other words, for a court to say, as the lower court did, that there was 'no sufficient' evidence, may properly be taken to mean that there was some evidence, but not enough, when weighed as against the evidence to the contrary, to support a recovery in the opinion of the court." We construed the court's order as granting a new trial on the ground that plaintiffs' verdict was against the weight of the evidence.

Here the plaintiffs' damage evidence, even though having probative value, was sketchy and vague, particularly concerning loss of profits. The $7,500 verdict stretched the limits of plaintiffs' evidence. Confronted with those circumstances the trial court ordered a new trial. We construe that order as one weighing the plaintiffs' evidence, and conclude that its effect was to grant defendant a new trial on the ground that the verdict was excessive.

■ We must accord the trial court a broad discretion in granting a motion for new trial, particularly where the motion is ruled on the ground of excessiveness. Wicker v. Knox Glass Associates, 362 Mo. 614, 242 S.W.2d 566[4]; Steurnagel v. St.

Louis Public Service Co., 361 Mo. 1066, 238 S.W.2d 426[10]. The trial court, not having abused its judicial discretion in granting a new trial, must be affirmed.

The plaintiffs say that if there is to be a new trial it should be limited to the issue of damages. Section 512.160, subd. 3, V.A.M.S., directs such a limited retrial "unless justice requires otherwise." However, remanding a case for trial on all issues is proper where the issues of liability and resultant damages are interrelated (Bramblett v. Harlow, Mo.App., 75 S.W.2d 626[17]), or where there is an issue of punitive damages (Dettler v. Santa Cruz, Mo.App., 403 S.W.2d 651[12]). Both factors exist here, and the new trial should be on all issues.

We affirm the order granting a new trial on all issues; we dismiss defendant's appeal from the order denying its after-trial motion for judgment.

All concur.