**DAMON PURSELL CONSTRUCTION COMPANY, Respondent,**

v.

**MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Appellant.**

**No. WD 64232.**

Missouri Court of Appeals, Western District.

March 28, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 2006.

As Modified May 30, 2006.

preserved for review. *P & K Heating & Air Conditioning v. Tusten Townhomes Redevelopment Corp.,* 877 S.W.2d 121, 126 (Mo.App. 1994).

Zachary T. Cartwright, Jr., Jefferson City, MO, for appellant.

Richard W. Miller, Kansas City, MO, for respondent.

Before HARDWICK, P.J., BRECKENRIDGE and SPINDEN, JJ.

PATRICIA BRECKENRIDGE, Judge.

The Missouri Highway and Transportation Commission (MHTC) appeals the decision of the trial court granting Damon Pursell Construction Company a new trial based on newly discovered evidence. On appeal, MHTC claims the trial court erred in granting Damon Pursell's request for a new trial because the evidence was not newly discovered, Damon Pursell failed to demonstrate it had exercised due diligence, and it was not clear that the evidence would have altered the outcome of the trial. Additionally, MHTC claims the trial court erred in denying its motion for directed verdict because Damon Pursell's claim for additional compensation was settled and Damon Pursell failed to state a claim upon which relief could be granted for breach of warranty ex contractu. Because this court finds the trial court correctly determined that Damon Pursell was prejudiced by the fact that certain evidence was not presented to the jury, the trial court did not abuse its discretion in granting Damon Pursell's motion for a new trial. In addition, because there were disputed facts regarding MHTC's affirmative defense of accord and satisfaction, the trial court did not err in denying MHTC's motion for a directed verdict. Moreover, because Damon Pursell pled and presented sufficient evidence on its claim for breach of warranty ex contractu, the trial court also did not err in denying MHTC's motion for a directed verdict on that basis. Accordingly, the judgment of the trial court is affirmed.

**Factual and Procedural Background**

This case arises from a dispute regarding a highway construction project (the "Project") on a section of Route 71 in Kansas City, known as Bruce Watkins Expressway. The Project involved two separate work areas, a north section and a south section. One of the primary tasks required to complete the Project was to excavate the south section and haul the excavated material to the north section for use in construction. The Project also required that "Class A Excavation" (dirt) and "Class C Excavation" (rock), be used in certain areas. MHTC sought bids from contractors to perform the tasks required to complete the Project. Contractors wishing to bid on the Project were provided with plans, specifications, and other documents upon which to base their bids. These documents represented that the Project would be "balanced," meaning adequate quantities of dirt and rock existed at the Project site, without the need to haul materials to off-site locations or haul materials to the Project site. Because Damon Pursell submitted the lowest bid, it was awarded the contract.

Prior to the completion of the Project, Damon Pursell claimed that it encountered more rock than was represented in the documents on which Damon Pursell based its bid. Additionally, Damon Pursell claimed that there was less "clean dirt" than MHTC's documents represented. Rather, Damon Pursell claimed that it encountered "transitional material," which Damon Pursell claimed was a rock and dirt mixture that MHTC would not permit Damon Pursell to use in areas that required "clean dirt." As a result, Damon Pursell was left with substantial amounts of transitional material that had to be hauled away from the Project site and it had to bring in "clean dirt" to complete the Project. Damon Pursell made MHTC aware of the unexpected conditions and requested additional compensation. In Change Order Number 7, Mark Montgomery, an engineer for Damon Pursell, made an adjustment to the quantities of "Class A" and "Class C" excavation. This Change Order, however, did not expressly address additional costs for hauling materials to an off-

site location or hauling "clean dirt" in. MHTC claimed the conditions that resulted in the Project not being "balanced" were the result of mismanagement on Damon Pursell's part and, therefore, MHTC declined to pay Damon Pursell additional compensation.

Damon Pursell filed suit, claiming that it was entitled to additional compensation of approximately 2.2 million dollars for the expense of hauling the transitional material away and hauling dirt in. MHTC denied Damon Pursell's claim and alleged that Damon Pursell failed to properly manage the Project. During discovery, Damon Pursell made several requests for production, seeking all videotapes of the Project. MHTC produced one videotape in response to Damon Pursell's request for production. This videotape showed workers driving around Kansas City checking hauling routes. Thus, the videotape was not relevant to the issues being litigated. Based on MHTC's production of only this one videotape, Damon Pursell concluded that this was the only videotape that existed relating to the Project.

In fact, however, MHTC created another videotape of the Project worksite and Damon Pursell's off-site waste disposal area. This videotape was of a higher quality and panned a much greater area of the Project worksite than the other video. This videotape also contained a more complete and comprehensive view of the soil conditions at the Project site, including roughly forty-five minutes of detailed images of much of the south portion of the Project where the majority of rock overrun and dirt under-run occurred. MHTC did not provide a copy of this videotape to Damon Pursell prior to trial.

The trial, which lasted from November 18, 2003, to December 3, 2003, focused on whether the cause of the Project not being balanced was Damon Pursell's mismanagement or by miscalculations made by MHTC. Mr. Montgomery testified on the last day the parties presented evidence. Damon Pursell's trial counsel cross-examined Mr. Montgomery with entries from the project's "grading diary." The following exchange occurred in regard to one of the entries:

[Counsel for Damon Pursell:] And this is the part that I want to ask you about: "I directed Mark M."—that would be you?

[Mr. Montgomery:] Yes, sir.

[Counsel for Damon Pursell:] "I directed Mark M. to video the entire job site and waste areas in view of this new information."

And he goes on, "My contention is a lot of contamination is the result of blasting under a dirt pad, hence the large amount of soil intermingled with the rock."

At that point in time Mr. Russ was making this contention that there was a dirt pad, correct?

[Mr. Montgomery:] Correct.

[Counsel for Damon Pursell:] And he was directing you to video the entire job site and waste areas to essentially prove or demonstrate his contention—

[Mr. Montgomery:] Correct.

[Counsel for Damon Pursell:] —correct? We haven't seen your videotape, have we?

[Mr. Montgomery:] No. Deciding what to show or not show is by order of my lawyer. Depending on what my lawyer decides to show is—

[Counsel for Damon Pursell:] And the reason we haven't seen your videotape is because there was nothing on that videotape that would support Mr. Russ's contention; isn't that true?

[Mr. Montgomery:] No.

[Counsel for MHTC:] Objection, your Honor, that question is argumentative. A copy of that videotape has been supplied to counsel for plaintiff. If he wants to show it—

[The Court:] You can go into that on redirect. This is cross-examination.

[Counsel for Damon Pursell:] I'll restate the question. Isn't it true that we haven't seen that videotape because there is nothing on that that would support Mr. Russ's contention?

[Mr. Montgomery:] No. If you want to show the video, you could. It does show—

[Counsel for Damon Pursell:] It's Mr. Russ's contention, sir.

[The Court:] Let him finish his answer.

[Counsel for Damon Pursell:] I'm sorry. Go ahead, Mr. Montgomery.

[Mr. Montgomery:] The video is right over there if you'd [like] to show it. It would be fine with me, but we're going to be here a lot longer.

[Counsel for Damon Pursell:] I've reviewed it, sir.

[Mr. Montgomery:] Okay.

[Counsel for Damon Pursell:] And you've reviewed it, too, haven't you?

[Mr. Montgomery:] Yeah. And I have an engineering degree.

[Counsel for Damon Pursell:] And isn't it true that there is nothing on that videotape that supports Mr. Russ's contention?

[Mr. Montgomery:] I don't know. I've not reviewed that video in probably at least the last year. But I think it showed that.

[Counsel for Damon Pursell:] I have no other questions.

[Mr. Montgomery:] Okay.

[Counsel for Damon Pursell:] Your witness.

[Counsel for MHTC:] Mr. Miller, do you wants [sic] to watch the videotape?

[Counsel for Damon Pursell:] If you believe it supports your contention, Mr. Cartwright, it is your tape, you can put it in. I have no objection to it.

Defendant's Exhibit No. 326 was then marked for identification by Mr. Cartwright. Following this exchange, Mr. Montgomery described Exhibit 326 as a videotape of the Project site filmed on September 9th, 10th, and 11th of 1998. Thereafter, MHTC offered Exhibit 326, which the trial court admitted without objection. At a point later in the proceedings, MHTC attempted to play Exhibit 326 for the jury. Because there was no VCR in the courtroom, however, the videotape was not played. It is apparent from its questions that Damon Pursell believed that Exhibit 326 was the same videotape that had been produced for them during discovery.

After the close of all the evidence, both sides moved for a directed verdict. The trial court denied both parties' motions. During closing argument, counsel for MHTC made reference to Exhibit 326, stating: "Counsel for plaintiff had a copy of the videotape. If there was anything on it that he thought was favorable to his case, you know darn well you would have seen it." After closing arguments, the jury was instructed and retired to deliberate. While in deliberations, the jury requested to review several exhibits, including Exhibit 326. The trial court, however, was concerned that, without expert testimony to explain the significance of the evidence, the jury would misinterpret the evidence's meaning or importance. Consequently, the trial court denied the jury's request to view Exhibit 326.

Between the close of evidence and the jury's request to examine Exhibit 326, Damon Pursell viewed Exhibit 326. Damon Pursell discovered that Exhibit 326 was not the same videotape that had been produced during discovery. Rather, Exhibit 326 was a videotape of the project that, Damon Pursell argued, supported its claim of naturally occurring transitional material. After the jury's request to review some of the exhibits, Damon Pursell informed the court that Exhibit 326 had never been disclosed and was material evidence favorable to its claim. A hearing was held on the matter outside the presence of the jury. At the hearing, Damon Pursell played both Exhibit 326 and the videotape actually produced by MHTC for the trial court, demonstrating that the exhibit was different from the other videotape produced, and arguing that the evidence on the tape was probative of the material issues in dispute.[1] After discussions with both parties about what should be done about the discovery of the contents of Exhibit 326, the trial court ultimately decided not to reopen the evidence or otherwise bring the contents of Exhibit 326 before the jury.

After failing to reach a verdict, the jury returned to the courtroom and informed the trial court that it was unable to reach an agreement. The trial court instructed the jury to continue deliberating in an attempt to reach a decision because they "haven't been at it that long." The jury agreed and continued to deliberate. The jury returned a second time to the courtroom and once again informed the court that it was still unable to reach an agreement but that they needed to keep trying. The court instructed them to continue deliberations. Ultimately, the jury returned a verdict in favor of MHTC, nine to three.

Damon Pursell filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Damon Pursell asserted that it was entitled to judgment notwithstanding the verdict on the issue of liability because it had proved the elements for its claim of ex contractu breach of warranty. Damon Pursell also claimed that it was entitled to a new trial because the verdict was against the weight of the evidence. Finally, Damon Pursell asserted that it was entitled to a new trial because Exhibit 326 was not disclosed prior to trial and was newly discovered material evidence.

The trial court denied Damon Pursell's claim that it was entitled to judgment notwithstanding the verdict because it had proved the elements of ex contractu breach of warranty and its claim that it was entitled to a new trial because the verdict was against the weight of the evidence. Nevertheless, the trial court found that Damon Pursell had exercised due diligence in the pursuit of all videotapes of the Project; that MHTC failed to produce the videotape marked as Exhibit 326 to Damon Pursell; that MHTC informed Damon Pursell that the only videotape in existence was the one produced to Damon Pursell; that Damon Pursell had reason to believe that Exhibit 326 was the previously produced videotape, and did not, therefore, have reason to view the videotape prior to the submission of the case to the jury; that the footage captured by the videotape was the "best evidence for the jury to see the naturally occurring state of the subsurface material"; that Damon Pursell was unable to utilize the evidence contained on Exhibit 326 during trial because, "through no fault of its own, [Damon Pursell] did not discover the true content of Exhibit 326 until after the close of evidence"; and,

---

1. Damon Pursell made clear at the hearing that it did not believe and was not accusing MHTC of intentionally withholding the videotape.

finally, that Damon Pursell was prejudiced because it lacked access to Exhibit 326 until after the case had been submitted. Therefore, the trial court granted Damon Pursell's motion for a new trial based on newly discovered evidence. MHTC filed this appeal.

### No Reversible Error In Granting Motion for New Trial

In its first point on appeal, MHTC asserts the trial court erred in granting Damon Pursell's motion for a new trial on the ground that Exhibit 326 was newly discovered evidence. In particular, MHTC claims that Damon Pursell failed to satisfy all the elements required for a new trial based on newly discovered evidence because Exhibit 326 did not come to Damon Pursell's knowledge since trial; Damon Pursell failed to show that it exercised due diligence to discover Exhibit 326; and there was no finding that the evidence would produce a different result.

■■■■ Rule 78.01 permits the trial court to "grant a new trial of any issue upon good cause shown." "The trial court has wide discretion in ruling on a motion for a new trial and is vested with substantial discretion over matters of fact in ruling on new trial motions." *Higgins v. Star Elec., Inc.*, 908 S.W.2d 897, 903 (Mo.App. W.D. 1995). " '[A]ppellate courts apply a rule of greater liberality in upholding a trial court's action in sustaining a motion for a new trial, than in denying it.' " *Pasalich v. Swanson*, 89 S.W.3d 555, 559 (Mo.App. W.D.2002) (citation omitted). Thus, when reviewing the grant of a new trial, this court is " 'to indulge every reasonable inference in favor of the trial court and may not reverse unless there has been a clear abuse of discretion.' " *Id.* (citation omitted). A trial court has abused its discretion " 'when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration[.]' " *Id.* (citation omitted).

■■■■ To prevail on a motion for a new trial based on newly discovered evidence, Damon Pursell was required to establish that Exhibit 326:(1) came to Damon Pursell's knowledge since trial; (2) would not have been discovered earlier through due diligence; (3) is so material that it would have likely altered the result of the trial had it been introduced; (4) is not cumulative; and (5) is not being used to impeach a witness's character or credibility. *Sims v. Burlington N. & Santa Fe Ry. Co.*, 111 S.W.3d 454, 457 (Mo.App. E.D.2003). Damon Pursell must also provide an affidavit of the witness or otherwise explain its absence. *Id.*

The first element that must be satisfied for the trial court to grant a new trial based on newly discovered evidence is that the evidence must have come to Damon Pursell's knowledge since the trial. *Id.* For purposes of this appeal, MHTC concedes that it did not provide Exhibit 326 to Damon Pursell prior to trial. Nevertheless, Exhibit 326 was admitted at trial without objection and Mr. Montgomery described the content of the videotape during his testimony. Damon Pursell, however, was under the impression that Exhibit 326 was the same videotape that MHTC had produced during discovery. As a result, Damon Pursell did not believe that the videotape contained any relevant evidence and, therefore, did not play Exhibit 326 for the jury. In addition, MHTC did not play Exhibit 326 for the jury because there was no VCR in the courtroom. Neither Damon Pursell nor MHTC requested a recess to bring in a VCR. As a result, even though Exhibit 326 was introduced into evidence, the videotape was never published to the jury.

After the jury began deliberating, Damon Pursell, for the first time, discovered that Exhibit 326 was not the same videotape that MHTC had produced during discovery. During deliberations, the jury specifically asked to review Exhibit 326. Because the exhibit had not been published to the jury, the court decided that it would not allow the jury to view the videotape. After the jury specifically requested Exhibit 326, Damon Pursell advised the trial court that it believed that Exhibit 326 was the one videotape provided to Damon Pursell during discovery but was not. It was a different videotape that had not been disclosed in discovery and was material evidence supporting Damon Pursell's claims. Damon Pursell then played for the trial court both Exhibit 326 and Exhibit B, the videotape MHTC did provide to Damon Pursell during discovery. Damon Pursell also made an offer of proof. In particular, Scott Murphy, an attorney for Damon Pursell, testified that Damon Pursell never received a copy of Exhibit 326 from MHTC. MHTC also told the court that it was willing to stipulate that the two videotapes were different.

After the trial court viewed both videotapes, it asked Damon Pursell what remedy it was seeking. Damon Pursell responded that, "the only thing the [trial c]ourt can do is, if this jury would come back against Damon Pursell, is to entertain a motion for a new trial." Damon Pursell stated that it knew of no other remedy the trial court could effect. The trial court asked the parties whether the record could be reopened because the jury had requested the videotape. Damon Pursell agreed to stipulate that the record be reopened to introduce the exhibit accompanied by the "appropriate evidentiary comment" to explain the evidence to the jury. MHTC, however, was unwilling to reopen the record. MHTC argued that its witness who could respond to the testimony Damon Pursell would offer was unavailable because he had already returned to Kansas City, and that it would be "absurd" to introduce new evidence after the jury had been deliberating for hours. The trial court did not reopen evidence or otherwise bring the substance of Exhibit 326 before the jury.

█ Here, Exhibit 326 was introduced into evidence during the trial and counsel for Damon Pursell discovered the content of the exhibit prior to the conclusion of the trial. An essential element to a motion for a new trial based on newly discovered evidence is that the evidence came to the knowledge of the party *"since the trial."* *Belden v. Chicago Title Ins. Co.*, 958 S.W.2d 54, 57 (Mo.App. E.D.1997) (emphasis added). Because the videotape was admitted into evidence *during* the trial, it could not have come to Damon Pursell's knowledge *since* the trial. Thus, Damon Pursell cannot meet the first element of a motion for a new trial based on newly discovered evidence. Accordingly, the trial court erred in granting Damon Pursell's motion for a new trial based on newly discovered evidence. This finding, however, does not end this court's review of the matter. *Coffer v. Paris*, 550 S.W.2d 915, 917 (Mo.App.1977).

█ If a new trial is not properly granted for reasons given by the trial court, this court may inquire whether the new trial was properly granted on some other ground assigned in the motion for new trial. *Douglass v. Mo. Cafeteria, Inc.*, 532 S.W.2d 811, 813 (Mo.App.1975). "As a general rule, even if a trial court erred in granting a new trial on the ground it specified, a respondent on appeal may seek to justify the grant of the motion on any

other ground raised in the motion." [2] *In re Care of Coffman,* 92 S.W.3d 245, 251 (Mo.App. E.D.2002). In this case, Damon Pursell bears the burden of demonstrating that another ground in the motion for new trial is sufficient to uphold the trial court's grant of a new trial. *Id.* If the action can be sustained on any other ground specified in Damon Pursell's motion for new trial, this court must affirm. *Id.*

Here, in its motion for new trial, Damon Pursell claimed that MHTC failed to produce "a videotape prepared by the MHTC that contained video footage that was the best evidence in existence of the presence of transitional material on the Project and the extent of the transitional material encountered by [it] on the Project to [its] detriment and prejudice." Damon Pursell further argued in its motion for new trial that the failure of MHTC to produce the videotape, as requested during discovery, prevented it "from showing the videotape to the jury and making full use of it at trial." In fact, Damon Pursell argued that had it been provided a copy of the videotape prior to trial, it "would not only have shown it to the jury," but would have "structured its case in chief and its cross-examination around" the videotape. In effect, the basis of Damon Pursell's argument in its motion for a new trial is that, due to MHTC's discovery violation in failing to provide it with a copy of the videotape prior to trial, it was deprived of the *opportunity to fully present its case.*

Likewise, on appeal, while Damon Pursell's argument is couched in terms of the necessary elements for obtaining a new trial based on newly discovered evidence, the gist of its argument is that because MHTC failed to provide it with a copy of Exhibit 326 prior to trial, it was deprived of an opportunity to fully present its case. For example, on appeal, Damon Pursell argues that "[f]ailure by the MHTC to produce the videotape to Damon Pursell in advance of trial was extremely prejudicial to [the] presentation of its case." In particular, Damon Pursell claims that Exhibit 326 "is the best evidence of the presence of the naturally occurring transitional material at issue in this case" and, therefore, the videotape "contained material evidence relevant to an issue of critical importance in this case." Thus, this court finds that, even though Damon Pursell's argument is set forth in terms of the elements for a new trial based on newly discovered evidence, the essence of its argument on appeal is that because MHTC failed to provide it with a copy of the videotape prior to trial, it was denied the opportunity to fully present its case. Consequently, this court finds that Damon Pursell sufficiently argued in its brief on appeal that another ground set forth in its motion for new trial is sufficient to uphold the trial court's grant of a new trial.

■ In fact, this court similarly finds that the trial court's order granting Damon Pursell's motion for new trial, while also couched in terms of newly discovered evidence, in essence found that Damon Pursell was entitled to a new trial because MHTC failed to provide Damon Pursell with a copy of the videotape prior to trial and, therefore, Damon Pursell was de-

**2.** In *Bishop v. Carper,* 81 S.W.3d 616, 619 (Mo.App. W.D.2002), this court held that when the trial court fails to specify a ground for granting a motion for new trial, Rule 84.05(c) and (d) come into play and the respondent must "'affirmatively demonstrate "that there was some adequate, nondiscretionary ground for a new trial."'" Rule 84.05(c) and (d), however, are only applicable when the trial court fails to specify either a discretionary or nondiscretionary ground for granting the motion for a new trial. In this case, the trial court expressly stated a discretionary ground for granting Damon Pursell's motion and, therefore, Rule 84.05(c) and (d) are not applicable.

prived of an opportunity to present its case. In interpreting the trial court's order sustaining the motion for a new trial, this court gives the "specified ground a broad and liberal construction." *Demmas v. St. Louis Outdoor Adver., Inc.*, 452 S.W.2d 303, 307 (Mo.App.1970).

In its order and judgment granting Damon Pursell's motion for a new trial, the trial court found that Damon Pursell properly sought the production of documents, including any videotapes, from MHTC prior to trial. Moreover, the trial court found that Damon Pursell had no reason to know of the existence of Exhibit 326 prior to trial. The trial court also found that Exhibit 326 "was the best evidence for the jury to see the naturally occurring state of the subsurface material" and, through no fault of Damon Pursell, "did not discover the true content of Exhibit 326 until after the close of evidence and therefore was deprived of the opportunity to use it at trial." Thus, giving the specific ground relied on by the trial court to grant Damon Pursell's motion for new trial a broad and liberal construction, this court finds that, subsumed within the specific ground of newly discovered evidence, is the actual ground relied on by the trial court in awarding Damon Pursell a new trial. Specifically, this court finds that the actual ground relied on by the trial court in granting Damon Pursell's motion for a new trial is that Damon Pursell was deprived of the opportunity to present its case because MHTC failed to provide Exhibit 326 to Damon Pursell prior to trial. Therefore, the only remaining question is whether this ground is a proper ground for granting a new trial and, if so, whether the trial court abused its discretion in granting a new trial on this basis.

The basis of Damon Pursell's argument regarding MHTC's failure to provide it with a copy of the videotape prior to trial is similar to the ground for a new trial asserted by the plaintiff in *Printer's Service Co. v. Miami Systems Corp.*, 44 S.W.3d 907 (Mo.App. S.D.2001). In that case, the controversy arose from business dealings between the plaintiff and the defendant, whereby the plaintiff made folders out of paper supplied by the defendant and ultimately sold by the defendant. *Id.* The plaintiff sued the defendant for "payment for the services it performed in constructing the folders" and "sought damages for an alleged misrepresentation by defendant's agents that the products initially delivered were acceptable." *Id.* at 907–08. The plaintiff claimed that the defendant's misrepresentation induced it to continue making folders for delivery to the defendant to its detriment. *Id.* at 908. The defendant filed a counterclaim for breach of warranty. *Id.* at 907. Judgment was ultimately entered for the defendant. *Id.* at 908.

Thereafter, the plaintiff sought a new trial based on the alleged failure of the defendant to comply with Rule 56.01 in failing to amend an answer to an interrogatory. *Id.* at 908. Specifically, prior to trial, the plaintiff served the defendant with an interrogatory asking whether the defendant had transferred or conveyed any of the roughly 122,000 folders provided by the plaintiff. *Id.* The defendant responded in the negative. *Id.* There was evidence at trial, however, that the defendant had sold some of the folders, and the plaintiff claimed "the incorrect answer precluded plaintiff from conducting discovery relative to ... 60,000 folders defendant sold and the compensation defendant received for the sale of those folders." *Id.* The plaintiff claimed that, as a result of the defendant's incorrect answer to its interrogatory, the plaintiff was deprived of the opportunity to "develop evidence about defendant's use of the product for which

plaintiff sought payment." *Id.* The trial court granted the plaintiff's motion for a new trial on this basis. *Id.*

In upholding on appeal the trial court's grant of a new trial, this court held that the "trial court is permitted to grant a new trial when timely confronted with circumstances that indicate a party against whom judgment was rendered was denied the opportunity to present evidence relative to its case by reason of accident, mistake, inadvertence, mischance or unavoidable circumstances unmixed with neglect or inattention." *Id.* at 910. In particular, this court noted that the plaintiff had been neither "neglectful nor inattentive in failing to learn prior to trial that the interrogatory answer was incorrect." *Id.* at 910–11. Thus, this court concluded:

> As the trier of fact, the trial court was in a better position than this court to assess the effect further discovery might have had on plaintiff's case. In granting plaintiff's motion for new trial, the trial court obviously concluded plaintiff was prejudiced by defendant's failure to truthfully answer [the interrogatory]; that further discovery could have reasonably affected plaintiff's ability to try its case and defend against defendant's counterclaim.

*Id.* at 911. Thus, this court held that the trial court did not abuse its discretion in granting the plaintiff's motion for a new trial on this basis. *Id.*

Similarly, in *Pasalich,* this court affirmed the trial court's order granting the plaintiff a new trial because the defendant failed to update the opinion of an expert witness before trial resulting in prejudice to the plaintiff in the presentation of her case. 89 S.W.3d at 564. In that case, the plaintiff brought a medical malpractice claim against her physician. *Pasalich,* 89 S.W.3d at 556. Two years before trial, the plaintiff took the defendant's deposition

and he opined that the plaintiff developed pulmonary edema from the administration of fluids. *Id.* at 559–60. A couple of months before trial, however, the defendant apparently changed his opinion as to the cause of the plaintiff's pulmonary edema. *Id.* at 560. The defendant did not notify the plaintiff of the defendant's new opinion. *Id.* At trial, while the defendant was being examined, the plaintiff became aware of the defendant's new opinion for the first time. *Id.* After the jury returned a verdict for the defendant, the plaintiff claimed, in her motion for new trial, that she was entitled to a new trial due to the defendant's failure to disclose the change in his opinion. *Id.*

In affirming the trial court's order granting the plaintiff a new trial, this court noted that the defendant was required to disclose the change in his opinion to the plaintiff before trial. *Id.* at 561. *See also* Rule 56.01(e) (requires a party to supplement written interrogatory responses when a response changes or becomes untrue). This court further noted that when evidence has not been disclosed in response to appropriate discovery, the trial court may " 'reject such evidence or impose other appropriate sanctions.' " *Id.* (citation omitted). In holding that granting a new trial was an appropriate sanction, this court noted that the trial court found that the change in the defendant's opinion " 'could very well and probably did directly affect' the jury's deliberations" on the plaintiff's claim and, therefore, the failure to disclose affected the way in which the plaintiff prepared for trial. *Id.* at 564. Thus, because the trial court found that the defendant's failure to disclose his new opinion impacted the plaintiff's "trial strategy and presentation of her case," this court held that the trial court did not abuse its discretion in granting the plaintiff's motion for a new trial. *Id.*

In this case, like the defendants in *Printer's Service* and *Pasalich*, MHTC failed to adhere to the rules of discovery by providing Exhibit 326 to Damon Pursell prior to trial. Also, like the plaintiffs in *Printer's Service* and *Pasalich*, Damon Pursell was surprised by the discovery of Exhibit 326 and was not neglectful in failing to learn of the discovery violation in time to utilize the evidence at trial.[3] And, most important, like the plaintiffs in *Printer's Service* and *Pasalich*, the evidence discovered during trial would have assisted Damon Pursell in presenting its case to the jury. In light of the impact Exhibit 326 would have had on Damon Pursell's trial strategy and presentation of its case, this court finds that the trial court did not abuse its discretion in concluding that Damon Pursell suffered prejudice from MHTC's failure to provide Damon Pursell with a copy of the videotape prior to trial, thereby entitling Damon Pursell to a new trial. Accordingly, MHTC's first point is denied.

## No Entitlement to Directed Verdict on Defense of Accord and Satisfaction

■ In its second point on appeal, MHTC claims that the trial court erred in denying its motions for directed verdict at the close of Damon Pursell's evidence and at the close of all the evidence, because Damon Pursell was fully paid for the work it performed.[4] Specifically, MHTC asserts that Change Order Number 7 constitutes a settlement of Damon Pursell's claim for additional compensation[5] and Damon Pursell accepted payment under that settlement. MHTC claims that it is entitled to a directed verdict because Damon Pursell failed to make a submissible case since payment pursuant to Change Order Number 7 fully compensated Damon Pursell for any additional work it was required to perform.

■ Although MHTC characterizes its claimed error as the failure of Damon Pursell to make a submissible case, what MHTC is really arguing is that Damon Pursell's claim was defeated, as a matter of law, by its evidence of an affirmative defense. The proper characterization of MHTC's claim is necessary because it impacts the law applicable to this court's review. Generally, this court reviews the " 'denial of a motion for directed verdict as a question of law, viewed in the evidentiary light most favorable to the non-moving party, and determine[s] whether that party has made a submissible case.' " *Clark v. Belfonte Distrib., Inc.*, 163 S.W.3d 581, 584 (Mo.App. W.D.2005) (citation omitted). In determining whether the trial court erred in overruling a motion for directed verdict,

---

3. MHTC argues that there is no evidence to support the finding that Damon Pursell exercised due diligence in failing to discover Exhibit 326 sooner. The trial court, however, concluded that "Damon Pursell was diligent in conducing discovery in this case." Without going into further detail, this court finds sufficient evidence in the record to support the trial court's finding that Damon Pursell was not neglectful in failing to discover that Exhibit 326 existed and had not been disclosed prior to trial.

4. By presenting evidence after the trial court denied its motion for a directed verdict at the close of Damon Pursell's case, MHTC waived any error in denying that motion. *Senu–Oke v. Modern Moving Sys., Inc.*, 978 S.W.2d 426, 431–32 (Mo.App. E.D.1998). Therefore, this court has for review "only the action of the court in overruling the motion for a directed verdict at the close of all the evidence." *Polovich v. Sayers*, 412 S.W.2d 436, 438 (Mo. 1967).

5. "A change order is an agreement between parties that modifies or changes the original contract terms." *Fru–Con/Fluor Daniel Joint Venture v. Corrigan Bros., Inc.*, 154 S.W.3d 330, 332 (Mo.App. E.D.2004).

this court must "consider all the evidence viewed in the light most favorable to the plaintiff," give the plaintiff the "benefit of all favorable inferences arising therefrom," and "disregard the defendant's evidence except insofar as it aids the plaintiff's case." *Stout v. Cent. Nat'l Life Ins. Co.*, 522 S.W.2d 124, 128 (Mo.App.1975). When the claim of error on appeal is the failure to direct a verdict because of proof of an affirmative defense, however, the moving party is only entitled to a directed verdict if that party proved its affirmative defense as a matter of law. *Wolfe v. State ex rel. Mo. Highway & Transp. Comm'n*, 910 S.W.2d 294, 300 (Mo.App. W.D.1995). A "directed verdict should only have been granted if there were no factual issues remaining for the jury to decide." *Id.*

In this case, MHTC asserts that Change Order Number 7, entered into by Damon Pursell and MHTC, constituted a settlement of Damon Pursell's claim for additional compensation and Damon Pursell accepted payment under that settlement. In other words, MHTC claims that it was entitled to a directed verdict because payment pursuant to Change Order Number 7 fully compensated Damon Pursell for any additional work it was required to perform. These facts raise the affirmative defense of "accord and satisfaction":

> An "accord and satisfaction" contemplates an agreement between parties to give and accept something different from that claimed by virtue of the original obligation and both the giving and acceptance are essential elements. An "accord" is an agreement for settlement of some previously existing claim by substituted performance. "Satisfaction" is the performance of such agreement.

*Interstate Petroleum Distribs., Ltd. v. F & B Invs., Inc.*, 816 S.W.2d 263, 269 n. 5 (Mo.App. S.D.1991) (citation omitted). "Accord and satisfaction" is an affirmative defense that must be pled under Rule 55.08. An affirmative defense must be pled "to give the plaintiff notice, and failure to plead it generally results in waiver." *Titan Constr. Co. v. Mark Twain Kansas City Bank*, 887 S.W.2d 454, 458 (Mo.App. W.D.1994). In so pleading, it is necessary to set out the factual basis for the affirmative defense "in the same manner as is required for the pleading of claims under the Missouri Rules of Civil Procedure." *Curnutt v. Scott Melvin Transp. Inc.*, 903 S.W.2d 184, 192 (Mo.App.W.D.1995).

In its answer to Damon Pursell's petition, MHTC pled the affirmative defense of "payment," stating, "Plaintiff has been paid in full for all work performed in the construction of the project." It did not plead the facts asserted in its motion for directed verdict that, when the parties executed Change Order Number 7, they entered into a settlement of Damon Pursell's claim for additional compensation and Damon Pursell accepted payment under that settlement, i.e., accord and satisfaction. As noted above, failure to plead an affirmative defense generally results in waiver. *Titan Constr.*, 887 S.W.2d at 458. Nevertheless, under Rule 55.33(b), "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Here, the issue of whether Change Order Number 7 resolved all of Damon Pursell's claims for additional compensation was tried by the parties. Although it was not tried by the express consent of the parties, it was tried with the implied consent of the parties. Accordingly, the issue of accord and satisfaction shall be treated in all respects as if it had been raised in the pleadings.

MHTC, as the proponent of the affirmative defense of accord and satisfaction, has the burden of proof. *Gill*

*Constr., Inc. v. 18th & Vine Auth.,* 157 S.W.3d 699, 716 (Mo.App. W.D.2004). "Whether an accord and satisfaction has been reached is generally a question of fact." *Hiblovic v. Cinco–T.C., Inc.,* 40 S.W.3d 921, 923 (Mo.App. E.D.2001). Even if MHTC's evidence established a prima facie case of accord and satisfaction, it was not entitled to a directed verdict because Damon Pursell had no burden to prove to the contrary, and the trier of fact could disbelieve MHTC's evidence of accord and satisfaction. *Gill Constr.,* 157 S.W.3d at 716. An exception is that the moving party is entitled to a directed verdict if that party proved its affirmative defense, as a matter of law. *Wolfe,* 910 S.W.2d at 300. Therefore, MHTC could show its right to a directed verdict only if its evidence of its affirmative defense was of the nature to permit a finding in its favor without resolution of any disputed factual issues. For example, there would not be a disputed issue of fact if MHTC could prove its claim by contract documents, which could be interpreted by this court, as a matter of law, to unambiguously prove MHTC's affirmative defense.

In support of MHTC's claim on appeal that it was entitled to a directed verdict, MHTC refers to provisions in the original contract concerning bid items for specific quantities of Class A Excavation (soil) and Class C Excavation (rock); Section 203.7 of Missouri Standard Specifications (1996), which was incorporated into the contract; Damon Pursell's letter of October 21, 1998; copies of Mr. Montgomery's calculations of the final qualities of Class A and Class C excavation and the cross-sections used by Mr. Montgomery in performing them; Change Order Number 7; and testimonial evidence that Damon Pursell received a net additional payment for the adjusted quantities of Class A and Class C after execution of Change Order Number 7. Despite its argument relying on all of this evidence, MHTC asserts in a portion of its argument that Change Order Number 7 is an unambiguous contract, inferring that from this document the parties' intent to settle all of Damon Pursell's claims can be determined. It further asserts that parol evidence relevant to Damon Pursell's intent in the testimony of Damon Pursell's witnesses should be ignored, even if it was received without objection. Even if the original contract documents are also considered, it is clear that MHTC, in its argument on appeal, is relying on parol evidence outside the four corners of the original contract documents and Change Order Number 7 to support its claim that it is entitled to a directed verdict.

Additionally, the original contract documents and Change Order Number 7, alone, do not unambiguously prove an agreement between MHTC and Damon Pursell that the execution of Change Order Number 7 was intended to totally resolve Damon Pursell's claims from the Project not being balanced and that Damon Pursell received payment pursuant to that Change Order. Although Section 203.7 of Missouri Standard Specifications (1996) provides that the contract prices for excavation were intended to be full compensation for hauling, that provision must be considered in light of the entirety of the contract. The context of the entire original contract requires the interpretation that the excavation prices were set without including the cost of hauling materials on and off the premises of the Project because no such hauling was anticipated to be necessary since the Project was to be a balanced project. Also, Change Order Number 7 makes adjustments for Class A and Class C excavation. It includes a provision on its signature page that "[t]he terms of settlement outlined in the attached change order are hereby agreed to," and an au-

thorized representative of Damon Pursell executed it. These provisions, alone, do not unambiguously demonstrate the intent of MHTC and Damon Pursell that Damon Pursell was compromising its claims for costs of hauling excess Class C material off the premises of the Project and hauling additional Class A material onto the premises. Because disputed issues of fact must be resolved by the trier of fact on MHTC's affirmative defense of accord and satisfaction, MHTC was not entitled to a directed verdict. Accordingly, MHTC's second point is denied.

### No Entitlement to Directed Verdict on Ex Contractu Claim

 In its third point on appeal, MHTC claims the trial court erred in denying MHTC's motions for directed verdict because Damon Pursell failed to plead or prove facts that would support a claim for which relief could be granted.[6] Specifically, MHTC asserts that, absent a claim of common law misrepresentation, Damon Pursell's sole remedy for additional costs caused by unforeseen Project conditions was under the "differing site condition" provisions of the contract. MHTC argues that, because "a remedy existed under contractual provisions that were intended to address the specific type of claim at issue, [Damon Pursell] should not have been permitted to submit on an alternative theory that was created to provide such a remedy." Thus, MHTC argues that, even assuming Damon Pursell could prove each and every element required by this court's decision in *Ideker, Inc. v. Missouri State Highway Commission*, 654 S.W.2d 617, 621 (Mo.App. W.D.1983), as a matter of

law, it is not entitled to relief under that cause of action.

 "The appellate standard of review for denial of a motion for directed verdict is whether the non-moving party submitted substantial evidence that tended to prove the facts essential to its claim." *Gill Constr.*, 157 S.W.3d at 712. In cases in which the denial of a motion for directed verdict is based on a legal conclusion, this court exercises *de novo* review of the decision of the trial court. *Drummond Co. v. St. Louis Coke & Foundry Supply Co.*, 181 S.W.3d 99, 102–03 (Mo.App. E.D.2005). MHTC has the burden of persuading this court that the trial court erred. *Mo. Health Facilities Review Comm. v. Admin. Hearing Comm'n*, 700 S.W.2d 445, 451 (Mo. banc 1985).

In this case, Damon Pursell pled a cause of action ex contractu in the nature of a breach of warranty claim for extra compensation. This cause of action was recognized by this court in *Ideker*, 654 S.W.2d 617. *Ideker* recognized "a cause of action ex contractu in the nature of a breach of warranty by a contractor against a governmental entity premised on a positive representation of a material fact." 654 S.W.2d at 621. The court noted that this cause of action was available despite legal principles that would normally preclude a private entity from recovering from a governmental entity. *Id.* First, the court explained that because "damages were sought in connection with work performed on a public project under a contract with a governmental entity, the party sought to be held liable, the doctrine of sovereign immunity precluded a cause of action" for fraudulent misrepresentation. *Id.* Second,

---

**6.** As stated previously, by presenting evidence after the trial court denied its motion for a directed verdict at the close of Damon Pursell's case, MHTC waived any error in denying that motion and, therefore, this court has

for review "only the action of the court in overruling the motion for a directed verdict at the close of all the evidence." *Polovich v. Sayers*, 412 S.W.2d 436, 438 (Mo.1967).

private contractors in this situation were confronted with the "well established principle of contract law" "that when one agrees to do a thing possible of performance 'he will not be excused or become entitled to additional compensation because unforeseen difficulties are encountered.' " *Id.* (citation omitted). Thus, *Ideker* explained that the underlying motive in recognizing a cause of action ex contractu, was "fundamental fairness." *Id.* In other words, "[t]o avoid an unjust result," courts "refused to be circumscribed by the harshness of the doctrine of sovereign immunity and the principle of contract law that if performance is possible one is not entitled to extra compensation for unforeseen difficulties encountered." *Id.* Specifically, the court explained the rationale behind the cause of action:

> Syllogistically, where a governmental entity makes a *positive* representation of a material fact relied upon by a contractor in calculating its bid, which turns out to be false or incorrect after work is commenced and occasions additional expense, the contractor finds himself in the position of one who undertakes one contract but is confronted with performance of another. The governmental entity, pragmatically speaking, gets the benefit of another contract. If performance thereof by the contractor entails more expense than was calculated in submitting its bid, the governmental entity should bear the added cost rather than the contractor because the former is the beneficiary of necessary but unbargained for work resulting from its positive representation of a material fact which turned out to be false or incorrect.

*Id.*

■■■ A cause of action for breach of warranty ex contractu has six elements that must be established to prevail on such a claim:

(1) A positive representation by a governmental entity,

(2) Of a material fact,

(3) Which is false or incorrect,

(4) Lack of knowledge by a contractor that the positive representation of the material fact is false or incorrect,

(5) Reliance by a contractor on the positive representation of a material fact made by the governmental entity, and

(6) Damages sustained by a contractor as a direct result of the positive representation of a material fact made by the governmental entity.

*Id.* Damon Pursell properly pleaded these elements and presented evidence, which if found to be true, would have proved such a claim.

Nevertheless, MHTC argues that Damon Pursell was not entitled to proceed on an ex contractu claim. Specifically, MHTC claims "that the *Ideker* theory is not applicable when a highway construction contract contains a differing site conditions clause." Because the contract between MHTC and Damon Pursell contains a differing site conditions clause, MHTC argues that Damon Pursell was required to bring its claim under that clause. Alternatively, MHTC argues, Damon Pursell could have brought its claim under a theory of common law misrepresentation, had it properly pled such a cause of action. Relying on *Foster Construction C.A. & Williams Brothers Co. v. United States,* 193 Ct.Cl. 587, 435 F.2d 873 (Ct.Cl.1970), MHTC claims that, in order to establish a common law claim for misrepresentation, Damon Pursell was required to plead that it was "knowingly or negligently" misled by MHTC. MHTC argues that, because Damon Pursell did not bring its claim under the differing site conditions clause and did not properly plead a common law claim of misrepresentation, it did not plead or

prove a claim upon which relief could be granted. Consequently, MHTC claims, it was entitled to a directed verdict.

MHTC asserts that a cause of action ex contractu for breach of warranty recognized by *Ideker* was only intended to provide a remedy in those cases where a remedy did not exist. In this case, MHTC claims that because a remedy was provided by the contract, under the differing site conditions clause, *Ideker* is not applicable. In other words, MHTC contends that the remedy provided by the contract provision in this case is the exclusive remedy available to Damon Pursell. Nevertheless, MHTC cites no authority holding that the ex contractu theory in *Ideker* is inapplicable to contracts containing a differing site conditions clause. Moreover, *Ideker* in no way limits the availability of a private contractor's cause of action. MHTC's argument, on the contrary, appears to be inconsistent with the general rule applied by this court in *Graves v. Grebes' Estate*, "that a remedy specified in a contract is to be considered permissive rather than exclusive, unless so provided in the contract either expressly or by necessary implication." 613 S.W.2d 148, 150 (Mo.App. W.D. 1981). *See also* E.H. Schopler, Annotation, *Contractual Provision as to Remedy as Excluding Other Possible Remedies,* 84 A.L.R.2d 322 (1962). MHTC cites no contract provision that, either "expressly or by necessary implication," provides that the differing site conditions clause is the exclusive remedy to compensate Damon Pursell for additional costs caused by unexpected Project conditions.[7]

Perhaps the best guidance on this issue comes from *Sanders Company Plumbing and Heating, Inc. v. City of Independence,* 694 S.W.2d 841 (Mo.App.1985). In that case, Sanders entered into a contract with the City of Independence to build a sewer station. *Id.* at 843. In submitting its bid, Sanders relied on several positive representations by the City as to the subsurface conditions to be encountered on the project. *Id.* at 843–44. The contract signed by Sanders stated "that the contractor *must obtain* a change order for payment of *any* extra expenditures." *Id.* at 844 (emphasis added). After the work began, however, Sanders discovered subsurface conditions were different from those represented by the City. *Id.* These conditions resulted in substantially increased expenses for Sanders. *Id.* The process to obtain a change order was started, but, for unknown reasons, the process was not completed and no change order was issued. *Id.* Sanders brought a claim against the City alleging "that the City's plans, specifications and contract misrepresented the project's subsurface conditions and that it relied upon those misrepresentations and incurred additional expense." *Id.* Sanders prevailed at trial, but the trial court granted the City's motion for a judgment notwithstanding the verdict. *Id.*

Sanders appealed the trial court's judgment. *Id.* at 845. In resolving the issues raised on appeal, this court recognized that Sanders' claim was cognizable as a claim for breach of warranty ex contractu as recognized in *Ideker.* In particular, this court held that the trial court erred in granting the City's motion for judgment notwithstanding the verdict because Sanders had relied on a positive representation of material fact in accord with the elements of a breach of contract ex contractu as set forth in *Ideker. Id.* at 845–46. The

---

7. In the more specific context of construction contracts, Missouri courts have permitted a contractor to simultaneously plead a cause of action under the terms of the construction contract and a cause of action for *quantum meruit* for recovery of costs caused by "extra work." *See Steinberg v. Fleischer,* 706 S.W.2d 901, 907 (Mo.App. E.D.1986).

City argued, however, that "Sanders' recovery is precluded because it did not obtain a change order pursuant to the contract and because section 432.070 does not allow a municipality to enter into oral agreements." *Id.* at 847.

This court rejected the City's argument, holding that "[a]rgument about the absence of a change order and section 432.070 precluding recovery under Count II sidesteps the question raised by the theory of [Sanders'] cause of action. Sanders seeks to recover from the City in an action for breach of warranty inherent in the City's positive representation of material fact." *Id.* This court went on to say that if, as the jury found, "the City made false or incorrect representations of material fact that Sanders relied upon and that led to extra expense to the contractor, the City has no right to demand that Sanders first obtain a change order ... before it can recover damages for breach of warranty." *Id* This court concluded that "[d]iscussion of a change order in this context is *totally irrelevant.*" *Id.* (emphasis added). Thus, this court found that, despite the existence of a contractual provision for the parties to utilize when attempting to resolve conflicts regarding additional costs arising during the construction process, a plaintiff was still entitled to bring a claim under the *Ideker* cause of action. *See also Bernard McMenamy Contractors, Inc. v. Missouri State Highway Commission*, 582 S.W.2d 305, 310-13 (Mo.App.W.D.1979).

The circumstances of this case are similar to *Sanders.* Damon Pursell claims that, in making its bid to the MHTC, it relied on the plans and specifications, which represented that the Project would be "balanced." Damon Pursell asserts, however, that the Project was not "balanced" because the actual subsurface conditions were not as represented by MHTC. As in *Sanders,* MHTC counters that Damon Pursell is not entitled to relief because it did not bring its claim under the provision provided by the contract. In *Sanders,* the contract provided a provision, in the form of the change order process, for "extra expenditures." *Id.* at 844. Here, the contract provides a provision, in the form of a differing site conditions clause, for additional, unforeseen costs. In *Sanders,* the fact that a contractual provision existed for resolving disputes regarding additional costs was held to be "totally irrelevant." *Id.* at 847. This court permitted Sanders to prevail on an *Ideker* claim despite the existence of the contractual provision. *Id.* While the contractual provision provided by this case differs from the provision provided by the contract in *Sanders,* this court finds no discernible difference in the holdings of the two cases. Applying *Sanders* to this record on appeal, this court finds no reason why Damon Pursell's *Ideker* claim was barred as a matter of law by the differing site conditions clause. MHTC's third point on appeal is denied.

The judgment of the trial court is affirmed.

All concur.